STATE OF WISCONSIN
UNITED STATES DISTRICT COURT
(EASTERN DISTRICT OF WISCONSIN)

**PURSUANT TO SECTION(S)** §893.82, WIS STATS.
ALSO SECTION(S): 893.92, 53,52,51
AND 35 WIS STATS.

**COMPLAINANT'S NAME AND ADDRESS:**

MR. JOHN L. DYE JR.    #207379
DIVISION OF HEALTH AND SUBSTANCE ABUSE SERVICES
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220

**DEFENDANT'S ADDRESS:**

DIVISION OF HEALTH AND SUBSTANCE ABUSE SERVICES
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220

DIVISION OF ADULT INSTITUTIONS
3099 EAST WASHINGTON AVENUE
POST OFFICE BOX 7925
MADISON, WISCONSIN 53707-7925

*******************************************************************************************

I hereby certify that all statements contained herein this Notice Of Complaint are true and
that the **(Injury)**, **(Damage)**, or **(Death)** mentioned here within this complaint actually -
occurred.

Dated this 29, day of _____June_____, 2009.

_____
Complainant

*******************************************************************************************

I, __JOHN L. DYE JR.__, being first duly sworn, under oath deposes and says that I am the named
complainant above; and that the incident(s) mentioned in this Notice Of Complaint is true.

Dated this 29, day of June_____, 2009.

NOTARY PUBLIC
STATE OF WISCONSIN
SUBSCRIBED AND SWORN TO BEFORE ME THIS

cc. OFFICE OF THE ATTORNEY GENERAL,
    DOC / DIVISION OF ADULT INSTITUTIONS,

29 DAY OF June 20 09

MY COMMISSION EXPIRES 4-7-2013

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
STATE OF WISCONSIN
~~FILED~~

\*\*\* NOTICE OF COMPLAINT \*\*\*
'09 JUL -6 P1 :32

JOHN L. DYE JR.

      PLAINTIFF,

-VS-

      DEFENDANT(S).

JON W. SANFILIPPO
CLERK

Case No. 09-C-0660

BYRAN BARTOW - (WARDEN/DIRECTOR),
THOMAS SPEECH - (DEPUTY DIRECTOR),
WILLIAM GROSSHANS - (DAI ADMINISTRATOR),
JOSE J. ALBA - (MEDICAL DOCTOR),
SUSAN K. CURRAN - (CLINICAL DIRECTOR),
MIKE HART - (NURSING SUPERVISOR),
AUTUMN LACY - (PSYCHOLOGIST),
CINDY HARDING - (UNIT MANAGER),
DENNIS KAVANAUGH - (UNIT MANAGER),
STEVE SPANBAUER - (COMPLAINT EXAMINER),
THERESA BARWELL - (COMPLAINT EXAMINER).

---

### JURISDICTIONAL
### CIVIL RIGHTS COMPLAINT WITH A JURY DEMAND

    This is a **42 U.S.C.A.** §1983 Civil Rights Action pursuant to **Wis. Statues** §893.82, also - **Section(s)** §893.92, 53, 52, 51, 35, and 55, 54 by the plaintiff named above; alleging violations of his **Constitutional** Rights, and seeking money damages, declaratory judgment and injunctive relief against the named defendant(s) in their **individual** and **official** capacities.

    The plaintiff is requesting a trial by jury citing **Felder v. Casey**, cite as 108 S. Ct. 2303 Notice Of Claim inapplicable to Civil Rights Action; **Rhode v. Chapman**, cite as **101 S. Ct.** 2392 (1981).

### PARTIES

    The plaintiff **JOHN L. DYE JR.**, is presently a Wisconsin State prisoner as defined in - **Wis. Stat.** §801.02(7)(a)2, and presently residing at the Division Of Health And Substance Abuse Services / Wisconsin Resource Center - (WRC); with an address of Treffert & Butler street / post Office Box 220 Winnebago, Wisconsin 54985-0220.

    1). Defendant **JOSE J. ALBA**, is a Medical Doctor at the Wisconsin Resource **Center**; with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

2). Defendant **BYRAN BRATOW,** is the Warden/Director at the Wisconsin Resource Center – (WRC); with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

3). Defendant **THOMAS SPEECH,** is the Deputy Director at the Wisconsin Resource Center – (WRC); with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

4). Defendant **WILLIAM GROSSHANS,** is the DAI Administrator over the Division Of Adult Institutions located in Madison, Wisconsin with an address of 3099 East Washington Avenue / Post Office Box 7925 Madison, Wisconsin 53707-7925.

5). Defendant **SUSAN K. CURRAN,** is the Clinical Director at the Wisconsin Resource Center (WRC); with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

6). Defendant **MIKE HART,** is the Nursing Supervisor at the Wisconsin Resource Center – (WRC); with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

7). Defendant **AUTUMN LACY,** is a Psychologist at the Wisconsin Resource Center – (WRC); with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

8). Defendant **CINDY HARDING,** is a Unit Manager at the Wisconsin Resource Center – (WRC), with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

9). Defendant **DENNIS KAVANAUGH,** is a Unit Manager at the Wisconsin Resource Center – (WRC) with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

10). Defendant **STEVE SPANBAUER,** is a Complaint Examiner at the Wisconsin Resource Center – (WRC); with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

11). Defendant **THERESA BARWELL,** is a Complaint Examiner at the Wisconsin Resource Center – (WRC); with an address of Treffert & Butler street / Post Office Box 220 Winnebago, Wisconsin 54985-0220.

The actions, inactions or woefully inadequate actions of the defendant(s) stated herein this Notice Of **Complaint** reflect but not necessarily limited to: (Deliberate Indifference), (Gross Negligence), (Reckless Disregard), (Pain and Suffering), (Humiliation), (Embarrassment), (Worry), (Mental Distress), (Denied The Benefit Of Services, Programs and/or Activities), (Denial Of Medical Treatment and/or Pain Medication(s)), (Withholding Of Personal Property), (Abuse Of Court Ordered Guardianship), (Deformation Of Character/Slander), (Denial Of Food), (Conspiracy), and (Violation Of Plaintiff's Religious Rights).

Among various statues and numerous rights secured by the Constitution, the defendant(s) violated the plaintiff's First, Eighth, and Fourteenth Amendment Rights of the United States Constitution.

(2)

The plaintiff have exhausted all available administrative remedies prior to submitting this complaint.

The plaintiff also **'invoke the pendent jurisdiction'** of this court.

## STATEMENT OF FACTS

On January 13, 2009 while residing at the Wisconsin Resource Center - (WRC); on unit B-7 at approximately 2:45PM, several staff members approached the plaintiff in his cell while residing therein informing the plaintiff that he was going to be placed in Temporary Lock-up for an incident which allegedly took place earlier during medication pass.

As a result of the alleged allegations the plaintiff was in fact placed in Temporary Lock-up where he remained until March 19, 2009 at which time he returned to unit B-7 under the condition of a manipulative movement plan which was devised by the plaintiff's treatment team.

Before addressing the Deliberate Indifference, Humiliation, Embarrassment, Worry, Mental Distress, Deformation Of Character/Slander, Conspiracy, and Violation Of Plaintiff's Religious Rights, the plaintiff will first inform the court that the majority of the decisions to which the plaintiff was subjected to were all joint decisions made by the plaintiff's treatment team.

Nevertheless, while the plaintiff was in Temporary Lock-up he eventually received a Conduct Report as a result of the alleged allegations which caused him to be placed therein and receiving a 60 day disposition term to serve before being released and/or half-time of the term issued depending upon ones behavior/conduct.

Although half-time not being necessarily mandatory, it is more likely than not depending upon ones good behavior/conduct. Despite the plaintiff's numerous request to the proper staff regarding half-time release, each defendant; accept defendant(s) Grosshans, Spanbauer, and Barwell; refused to allow the plaintiff half-time release regardless of his being a model segregation inmate.

As a result of the defendant(s) refusal to release the plaintiff upon serving his half-time the plaintiff continued to serve out the remainder of his 60 day term whereby shortly before he was to be released upon completing his entire term, a member of the treatment team and/or the defendant Autumn Lacy--(Psychologist) brought the plaintiff a movement plan making his release from segregation subject to such plan.

Although the plaintiff having met with each of the defendant(s) prior 'minus' defendant(s) Grosshans, Spanbauer, Bartow, Speech, and Barwell, the defendant(s) devised a movement plan dealing with the plaintiff's Eating Disorder/Phobia, making his release from segregation dependent upon his accepting their plan if he wanted to be released from segregation regardless of the fact should he complete his entire 60 day term originally issued.

Although his placement in segregation had absolutely nothing to do with the 'manipulative' movement plan devised by the defendant(s), each defendant 'minus' Spanbauer, and Barwell, agreed to violate institution policies and procedures when they devised a plan to keep the plaintiff in segregation past completion of term unless he agreed to accept their plan.

Before addressing the contents of the manipulative movement plan devised by the defendants, the plaintiff would like to address various claims of this law suit while he was subjected to remain in segregation.

(3)

The plaintiff presently having a well known and medically documented eating disorder/
phobia of which causes his eating; on occasion to become irregular; and even more so when he
becomes depressed or stressed, which was in fact a result of his being placed in segregation.

As a result of the fabricated logistics of plaintiff's segregation placement, he was
humiliated, embarrassed, worried and slandered among other things which also caused plaintiff
mental distress.

Nevertheless, because of the plaintiff being a religious individual; he eventually began
to pray and "fast" which also led to his not eating for approximately (26) days; whereby as
such the plaintiff was seen by defendant Alba, MD. on February 3, 2009 due to some alleged
concerns by health services.

However, during the point of the brief 'alleged' examination out-side of plaintiff's cell
while still in shackles and/or restraints, the defendant Alba, MD. was informed on several
occasions by the plaintiff that he was 'religiously fasting' nevertheless, the defendant also
having had knowledge of the plaintiff's eating disorder/phobia, eating history, and his
religious fasting/fast; attempted to suggest the need of hospital intervention.

Because the plaintiff refused this defendants attempts to allow hospital intervention,
which in fact was not required and/or necessary because the plaintiff had 'fasted' on numerous
other occasions in the past of which some lasted as long as (40) days without food but
maintaining the necessary fluids for life, the defendant later returned with papers in his hand
stating that he was starting a petition for Guardianship against plaintiff.

The plaintiff reiterated to the defendant that he was 'fasting' and casually informed him
stating that: "I wouldn't do that", referring to petitioning the court but the defendant just
leaned his head to the side and walked away.  The following day the plaintiff received some
legal papers pertaining to Guardianship which indicated that a hearing was scheduled for the
following day which was February 5, 2009 at 8:00am.

As a hearing was held the following day whereby the defendants 'fabricated' petition was
granted by the court, the defendant(s) Bartow, Speech, Curran, Hart, Lacy, Harding, and
Kavanaugh were authorized to invoke medical treatment necessary including the administration
of fluids and nutrition; which forced and subjected the plaintiff to discontinue thereby ending
his religious fast.

Because of the fabricated statements submitted within defendant Alba's petition which was
also supported by defendant Kavanaugh whom is the co-petitioner, and defendant Alba's knowledge
of plaintiff's religious 'fast' at the time he chose to petition the court, as well as his prior
knowledge of plaintiff's eating disorder/phobia, eating history, irregular eating and known
fasting history, he has clearly interfered with plaintiff's right to practice his religious.

The "Temporary Guardianship" which was based upon false allegations which interferes with
plaintiff's First Amendment right to practice his religious because it also prevents him from
religiously fasting, expressly violates his rights under the First Amendment, also making
reference to the Religious Land Use and Institutionalized Person Act (RLUIPA), 42 U.S.C.
2000cc-1.

Under RLUIPA, prisons that receive federal funding are forbidden to burden a prisoner's
exercise of religion substantially unless the prison both has a compelling interest and employs
the least restrictive means possible for protecting that interest, Lindell v. McCallum, 352
F.3d 1107, 1109-10 (7th Cir. 2003).

(4)

"[T]o state a claim under RLUIP a Wisconsin prisoner need allege only that the prison has substantially burdened a religious belief[.]" Lindell, 352 F.3d at 1110.

Under the First Amendment's Free Exercise Clause, a prisoner retains the right to exercise his religious beliefs in prison, Kaufman v. McCaughtry, 419 F.3d 678, 681 (7th Cir. 2006)(citing Tarpley v. Allen County, Ind., 312 F.3d 895, 898 (7th Cir. 2002)).

To prevail under the Free Exercise Clause, a plaintiff need only to show a "substantial burden" on a "central religious belief or practice," Kaufman, 419 F.3d at 683 (citing Hernandez v. Comm'n of Internal Revenue, 490 U.S. 680, 699 (1989)).

The plaintiff is alleging that defendants Alba, and Kavanaugh have interfered with his religious fasting when they obtained the Temporary Guardianship to force him to eat, also the plaintiff is alleging that defendants Heart, Harding, Lacy, and Curran interfered and are therefore liable under a similar theory because these defendant(s) being the plaintiff's treatment team, each of them threatened to physically invoke upon the plaintiff the language within the Temporary Guardianship.

These defendants also used the terms of the Temporary Guardianship to force the plaintiff to eat thereby subjecting him to discontinue his religious fasting.

Because the plaintiff will ultimately be required to identify his religion in order for the court to determine whether 'fasting' is a central belief as required under the First Amendment, the plaintiff state that the source of his religion is in fact 'Pentecostal' / Church Of God In Christ / C.O.G.I.C., organized since 1907, Memphis, Tennessee; / Church Of God In Christ Inc..

Also, while the plaintiff was subjected to remain in segregation and despite his continued complaint(s) of loud screaming, banging, and various forms of deranged behavior on a daily basis as well as all throughout the night; he was 'literally' exposed to such conditions which caused him loss of sleep, worry, mental distress, hygienic concerns, and physical health concerns.

Exposing the plaintiff to screaming and various forms of deranged behavior, causing him to lose sleep, is not frivolous at: 720, "...[S]leep undoubtedly counts as one of life's basic needs. Conditions designed to prevent sleep, then, might violate the Eighth Amendment."

The term 'mental or emotional injury' has a well understood meaning as referring to such things as stress, fear, and depression, and other psychological impacts.

Casey v. Lewis, 834 F.Supp. 1477, 1549-50 (D. Ariz. 1993); Finney v. Mabry, 534 F.Supp. 1026, 1036-37 (E.D. Ark. 1982); see also Gates v. Cook, 376 F.3d 323, 343 (7th Cir. 2004) (noting evidence that "the isolation and idleness of Death Row combined with the squalor, poor hygiene, temperature, and noise of extremely psychotic prisoners create an environment 'toxic' to the prisoners mental health).

Even further, the plaintiff was subjected to the infestation of bugs within his residing cell while remaining in segregation which eventually began to get into the plaintiff's bed; thereby crawling on his face which resulted and further mental and emotional distress, and worry.

In referring back to page three-(3) of this law suit/complaint, the plaintiff will now address the treatment team/defendents devised 'manipulative' movement plan which eventually also resulted in plaintiff being denied food, conspiracy, mental distress, worry, gross, negligence, reckless disregard, pain and suffering, embarrassment, deliberate indifference, humiliation, and denial of medical treatment and/or pain medication(s).

While still remaining in segregation serving the original (60) day disposition term issued, defendant Lacy approached the plaintiff at his residing cell on February 25, 2009, at which time she provided him with a copy of the movement plan devised by the treatment team and/or defendant(s) Curran, Hart, Lacy, Harding, Kavanaugh, and Speech.

Upon prior meeting with each of these defendant(s) minus defendant Speech, each of these individuals were clearly informed on several occasions by the plaintiff although each of them already having knowledge that plaintiff presently would not be able to eat meals in the cafeteria area with his piers due to his eating disorder/phobia.

Nonetheless, after the defendant(s) having met with the plaintiff while in segregation; on several occasions in an attempt to manipulate him into accepting their devised movement plan, the plaintiff upon feeling and being continually pressured told the defendant(s) that even if he were able to make it down to the cafeteria; he still would not be able to eat due to his eating disorder/phobia.

The plaintiff also informed the defendant(s) that if he had to choose one of the three-(3) options offered within their manipulative movement plan that it would be to return back to unit A-7 because unit F-12 option is yet just another form of segregation and remaining on unit A-4 in segregation after completion of serving his (60) day disposition term was also just another form of manipulation to force him to accept their plan.

Upon further consideration of all matters at issue and closer observation of the movement plan devised by the defendant(s) themselves, the plaintiff although against his own wishes and the defendant(s) in violation of normal policies and procedures, plaintiff decided to invoke the option of remaining on unit 4 in segregation instead of allowing himself to become subjected to the defendant(s) manipulative plan.

The portion of the plan which the plaintiff chose to invoke clearly states: "If inmate Dye would like to continue to eat meal in his cell, he will have to remain on unit A-4. The defendant(s) also note that options were offered to the plaintiff and that his decision was to transfer to unit B-7 however, the plaintiff never at any time gave the defendant(s) an absolute decision.

The plaintiff further note that on numerous occasions he wrote to the defendant(s) regarding them stopping his receiving meals on the unit which he received prior to his placement in segregation and the possibility of him continuing to receive at least one or two meals on the unit, whereby he'd try and make an attempt to walk to/through the cafeteria the one meal he did not receive to try and get use to the idea which his eating disorder/phobia presently prevents.

Defendant(s) Speech, Bartow, Curran, Hart, Lacy, Harding, and Kavanaugh each refused and denied the plaintiff any meals to be continued on plaintiff's residing unit upon release from segregation which would thereby leave him in a position of not being able to eat and/or fed considering his known eating disorder/phobia.

This in fact is the only reason that plaintiff chose to invoke the option of remaining on unit A-4 in segregation which would allow him to be able to eat however, on March 10, 2009, defendant Harding came to plaintiff's residing segregation cell twice that day attempting to move him out of segregation just to manipulate him into accepting the plan, 'the plaintiff refused'.

On March 17, 2009, the defendant Harding returned again at which time she alleged having met with members of the treatment team and/or the defendant(s) whom now had allegedly decided to give the plaintiff what he had prior requested, one (1) or two-(2) meals on the residing unit upon release from segregation.

Although the defendant(s) had now agreed to provide the plaintiff with only one meal, upon questioning the status of the movement plan; the plaintiff was yet informed that his release from segregation would still be subject to the plan; therefore the plaintiff again refused.

On March 18, 2009, defendant Harding again returned to plaintiff's residing segregation cell however, at this point she returned with unit F-12 manager Martha Slacker; attempting to remove him from segregation to either unit F-12 or B-7; still subject to the movement plan however, when the plaintiff once again refused to become subject to the movement plan, defendant Harding became 'irate' and attempted to 'order' him out of segregation.

When the plaintiff refused to accept the manipulative plan to move him, defendant Harding informed the plaintiff that he would be receiving a conduct report for disobeying orders which clearly caused more worry, mental distress, deliberate indifference, humiliation, and personal embarrassment.

The defendant(s) own plan offered the option of remaining in segregation which plaintiff chose to invoke subjecting him to a conduct report for disobeying orders and while still serving a disposition term on yet a prior conduct report written by this very same defendant.

Because the plaintiff was offered the option of remaining in segregation within the plan devised by these defendant(s), and because the plaintiff was yet still serving a term on a prior conduct report, ordering him out of segregation was contradictory, and in violation of normal policies and procedures, as well as caused the plaintiff mental distress, worry, humiliation, embarrassment, and was deliberate indifference.

In Perkins v. Kansas Dept. Of Corrections, 165 F.3d 803 (9th Cir. 1999) infliction of psychological pain can violate the Eighth Amendment's prohibition against cruel and unusual punishment, see also: Shamaeizadeh v. Cunigan, 338 F.3d 535 (6th Cir. 2003)(plaintiff can seek damages for pain, suffering, embarrassment, and humiliation in action(s) brought under 42 U.S.C. §1983).

The following day on March 19, 2009, after briefly speaking with one of the segregation unit supervisors whom informed plaintiff that she had attended the meeting at which point the decision was made to provide him with one meal, the plaintiff decided against his better judgment on March 19, 2009 to give the plan a try which would also allow him to be released from segregation.

When the plaintiff was moved back to B-7, an open unit, despite the already ambiguous language written within the manipulative movement plan devised by the defendant(s), defendant Harding then told the plaintiff that if he didn't go/attend the cafeteria twice daily that he would not receive the one meal and would be subject to be moved again causing further stress.

Even after returning back to unit B-7 and now having to deal with the idea of not being fed at all because his eating disorder/phobia interfered with his ability to attend the cafeteria twice daily, he again met with several of the defendant(s) whom included defendant(s): Alba, Curran, Harding, and Lacy whom each were aware of his lack of; and request for food situation.

(7)

Upon plaintiff being moved to unit B-7, he made every attempt todate to attend and/or walk through the cafeteria at least once daily and/or every other day to prevent his continuously being moved from unit to unit which the plan also included the return to segregation causing further mental and emotional distress, worry, humiliation and personal embarrassment.

As a result of plaintiff's continued attempt to comply with defendant(s) manipulative plan, he continues to become physically sick suffering serious chest pains, headaches, sweating, nervousness, stress, depression, anxiety, and hunger pains, many of which have lasted for days after the initial experience itself.

Evidence of the hunger pangs caused by 24 hours without food would demonstrate "the wanton and necessary infliction of pain" and the "unquestioned and serious deprivation of basic human needs" forbidden by the Eighth Amendment, Rhode v. Chapman, 452 U.S. 337, 348, 101 S.Ct. 2392 (1981); see also: Willis v. Bell, 726 F.Supp. at 1112-21.

Because the condition/situation presently exist, the plaintiff allege imminent danger noting the necessary injury, threat or prison condition causing the physical injury which was/is real and indeed proximate, citing: Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. (2003); also: Heimermann v. Litscher, 337 F.3d 781 (7th Cir. 2003).

When the plaintiff chose to religiously 'fast' the defendant(s) made/forced him to eat by petitioning the court for a Temporary Guardianship. Ironically now that the plaintiff choose to eat they deny/refuse to feed the plaintiff thereby having full knowledge of his medically documented eating disorder/phobia.

Also when the plaintiff met with the defendant(s) on several occasions prior to release from segregation, he requested that he continue to be provided with at least one meal received on his residing unit upon his release but the defendant(s) refused/denied his request however, and/or ironically at a later date on approximately March 17, 2009 the defendant(s) eventually changed their position, with conditions.

Even further, after the plaintiff was released from segregation and re he met with defendant(s) Alba, and Harding on April 07, 2009 at which time and prior thereto, he requested the possibility of having some anxiety medication prescribed to try and help him cope/deal with the attempts of trying to attend and/or at least walk through the cafeteria without having to experience physical complications of getting sick due to his eating disorder/phobia.

Having also been denied/refused the possibility of having an anxiety medication prescribed to possibly lessen the physical pains/complications, ironically once again the defendant(s) changed their position at a later date on approximately April 23, 2009 and prescribed an anxiety medication.

The defendant(s) actions, inactions or woefully inadequate actions have continued to cause the plaintiff pain and suffering, mental and emotional distress, humiliation, worry, personal embarrassment, denial of food, and denial of and/or inadequate medical care.

The defendant(s) actions also exhibited deliberate indifference, gross negligence, reckless disregard, deformation of character and conspiracy among other things.

(8)

Because the plaintiff was refused an anxiety medication upon numerous request to the defendant(s): Alba, Harding, Lacy, and Curran as well as continuously being denied basically his every request only to have the exact same request acknowledged/granted at a later date, and the plaintiff continuously being denied 'food' considering the limits involving his disorder; resulting in hunger pangs, ... the risk of harm could be inferred.

Deprivation of food may violate the Eighth Amendment depending on the "amount and duration of the deprivation", a deprivation that might have had more severe repercussions for the plaintiff, already infirm, than others, see: Reed v. Mcbride, 178 F.3d 849 (7th Cir. 1999).

As it is well known that respondent superior liability does not apply in §1983 civil actions, the defendant(s) Bartow, Speech, and Grosshans whom is the DAI Administrator of the Division Of Adult Institutions; whom also upon receipt of one of the plaintiff's letters; directed defendant Bartow to address plaintiff's situation which is sufficient to support a claim that these defendant(s) were aware of facts from which the risk of harm could be inferred, the risk was sufficiently obvious that they could be found to have drawn the inference.

The deprivation of a single identifiable human need such as **food**, warmth, or exercise can rise to the level of cruel and unusual punishment, 2782. Wilson, 501 U.S. at 298 (quoting Rhode, 452 U.S. at 347); see also: Labounty v. Coughlin, 137 F.3d 68, 74 (2d Cir. 1998); Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998).

Because the plaintiff have continued to suffer hunger pangs on a daily basis and is uncertain on a daily basis if he will obtain food to eat from the defendants whom have todate withheld such because of his eating disorder/phobia limiting his ability to attend the cafeteria twice daily, ... damages for emotional distress may be appropriate where the plaintiff suffers anxiety, stress, mental and emotional problems, and humiliation, Salinas v. O'Neill, 266 F.3d 827 (5th Cir. 2002).

See also: Thompson v. Opets, 74 F.3d 1452 (6th Cir. 1996); Ferrill v. Park Group, Inc., 168 F.3d 468 (11th Cir. 1999)(a plaintiff bringing a civil rights claim may be compensated for intangible **psychological** injuries as well as financial, property, or physical harm.

As a result of the defendant(s) actions, inactions or woefully inadequate actions, the plaintiff's mental and emotional state of mind have/is being affected thereby exacerabating his depression, anxiety, hunger pangs, and physical health.

Physical and mental pain(s) can constitute a "serious medical need" even if the failure to treat it does not make the condition worse, however, the plaintiff continues to experience serious chest pains, headaches, stress, depression, anxiety, mental distress, and daily hunger pains among others; in his forced attempt to attend the cafeteria twice daily.

Because the plaintiff is unable to comply twice daily to the defendant(s) manipulative plan, the defendant(s) have continued to deny him food and/or refuse to feed him; yet alone three-(3) meals a day, as such the plaintiff have been subjected to attempt to survive on a pack of cheese crackers; six-(6) in a pack which are handed out during each nightly medication pass at approximately 8:15pm.

The plaintiff have also 'on occasion' been given limited items by other inmates to eat/consume; whom appear to be concerned with his health/well being more than the defendants, also, as a result of being on unit B-7 inmates are provided each week a commodity credit which can be transferred into spending money, however, the plaintiff have only received approximately 0.60¢ each week since his return to unit B-7.

(10)

In referring back to the Temporary Guardianship obtained and the fabricated language stated therein by the defendant(s) which clearly state but not limited hereto that the plaintiff is/was (unable to see that food is safe for consumption), (believes food/water tainted), (unable to distinguish reality of not eating and this resulting in death), and (he will not eat to the point of medical risk to life on false ideation), ...the defendants have acknowledged awareness of acts from which the risk of harm could be inferred.

Although the language submitted within the Temporary Guardianship by the defendant(s) is indeed fabricated, the need for medical care was/is indeed real and proximate when addressing plaintiff's prior need for anxiety medication due to the severe physical and mental pains suffered by him as a result of his forced attendance by the defendant(s) to the facilities cafeteria.

Also, medical care was/is indeed real and proximate when addressing the plaintiff's exacerabated depression, anxiety, mental, emotional & psychological state of mind as well as his general health and continued hunger pangs which cause much discomfort, suffering, and lack of sleep among other medical problems.

A medical need is considered "serious" if it "causes pain, discomfort, or threat to good health", see also: Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988)(denial of treatment that could "eliminate pain and suffering at least temporary"); Williams v. Ramos 71 F.3d 1246 (7th Cir. 1995); Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994)(eighth amendment imposes upon prison officials a duty to maintain humane conditions of confinement, including adequate **food**, clothing, shelter, and **medical care**.

Also, prior to plaintiff being placed on a segregation unit; he requested his already prescribed pain medication from medical staff and/or health services whom had forgotten to bring it to him during medication pass however, upon repeated request he was refused/denied his medication even though he had taken the necessary steps in properly requesting such.

Upon writing to the nursing supervisor; defendant Hart regarding the matter, his response was indifference at best however, once again at a later date and/or at the completion of the institution complaint process utilized by the plaintiff, the defendants changed positions; although having already subjected the plaintiff to the denial of his pain medication, now requiring nursing under the proper circumstances to deliver requested medication(s) to the inmate.

See also: Ellis v. Butler, 890 F.2d 1001, 1003 (8th Cir. 1989)(nurse's failure to deliver pain medication); Laven v. Lampert, 242 F. Supp. 2d. 821 (D.Or. 2002)(failure to provide medication for partial spastic paralysis of the foot).

Upon further addressing plaintiff's mental, emotional, psychological and/or medical claims, he submitted numerous request to health services complaining about a condition of 'arthritis' which affects him in his hands, wrists, & fingers causing substantial pain on a regular basis.

However, upon being seen by health services, the plaintiff also requested medical approval for the issuance of a longer toothbrush due to the medical limitations and pain affecting his hands and fingers resulting from the arthritis; but not limited thereto, nevertheless, health services of whom is included as part of the plaintiff's treatment team denied his request.

Upon meeting with health services the plaintiff was only asked to hold out his hands, turn them over, and make a fist which was the extent of the alleged examination, and at the time; reason for denial of plaintiff's request.

(10)

The plaintiff has a known, treated, and medically documented condition of arthritis which affect several of his limbs and joints on a regular basis of which include the use of his hands, wrists, and fingers; whereby the residing facility requires prisoners to use the miniature toothbrushes provided by them which are approximately 3½ to 4"inches and/or the size of a small pinkey finger.

Because of the extreme smallness in size of the toothbrush; the plaintiff continues to have sporadic complications in the use thereof, however, due to the (health services/-treatment team's) denial of plaintiff's request; he again utilized the facilities complaint process (ICRS); which also resulted in a denial of his request as well as a fabricated medical report to support defendant(s) denial.

Upon exhausting all available administrative remedies, the plaintiff also addressed this particular matter with defendant Grosshans whom directed defendant Bartow to address the matter, defendant Bartow having addressed/fabricated the issue of the longer toothbrush(s) allegedly not being allowed at the facility; failed to address the issues/matter in it's entirety.

Defendant Grosshans nor Bartow ever addressed the issue of the fabricated medical report noted within the complaint examiners decision **alleging that** plaintiff had full range of motion in his hands and no inflammation or deformities on his extremities that would limit the movement of his hands and wrists.

In fact the plaintiff's right thumb has a deformity and is permanently broken which medical documentation upon being treated prior to incarceration will clearly support thereby contradicting the (health services/treatment team's) fabricated report submitted within the complaint examiners decision.

Even further, due to the defendant Bartow's cavalier response regarding plaintiff's denial for a longer toothbrush which is quoted as stating: the reason for this prohibition is our interest in maintaining safety of staff and inmates, having a long-handled toothbrush presents a potential weapon which could be obtained by any inmate on the unit, ... **the plaintiff** forwarded this defendant and defendant Grosshans copie(s) of documentation; allowing other/another prisoner indefinite use of a full size toothbruse; contradicting his quoted response.

Colburn II, the Ninth Circuit Court Of Appeals has held that prison officials are Deliberate Indifference for purpose of the Eighth Amendment when they "knew or should have known", deliberate indifference culpability means two-(2) things, **(1).** a knowledge element satisfied by an officials actual knowledge and **(2).** a response element satisfied by reckless disregard.

This is the **prototypical** case of deliberate indifference where a prisoner with a potentially serious medical condition of arthritis repeatedly requesting the necessary relief for a longer toothbrush, (receiving none'), and continuing to endure sporadic pain and suffering as a result of the relief denied, see also: Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996).

As defendant Speech is also the Reviewer of the complaint process (ICRS); and have openly on several occasions responded to a few of the plaintiff's letters of complaints regarding the various issues and concerns, defendant(s) Grosshans, Bartow, and Speech had full knowledge sufficiently obviously that they could be found to have drawn the inference,

In referring to defendant(s) Grosshans, Bartow, and Speech on occasions, and their liability and/or personal involvement, because liability will not attach under 42 U.S.C. §1983 until a plaintiff demonstrates the defendant's direct involvement in the claimed deprivation of constitutional rights, Wolf-Lillie c. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983; Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982), if the defendant is not the immediate actor, the plaintiff need only show that the defendants' actively encouraged, authorized, directed, ratified, or acquiesced in the unconstitutional acts of his subordinates.

Because failure to take corrective action to intervene does not alone give rise to a claim under 42 U.S.C. §1983, Soderbeck v. Burnett County, Wis., 752 F.2d 258, 293 (7th Cir. 1985), when supervisory liability is predicated on failure to act, the plaintiff is often times required to show "an extremely high degree of culpability," which in fact; the plaintiff have done so regarding these three-(3) defendant(s).

Defendant Speech, however, was in fact personally involved in constructing the devised 'movement plan' to which the plaintiff was manipulated into becoming subject to, this defendant also met with several of the other defendant(s)/treatment team regarding various issues concerning the plaintiff of which included but not limited to the 'movement plan' which also dealt with dictating when, where, and how the plaintiff eats.

Each defendant named herein this action had knowledge of the basic facts and were deliberately indifferent thereto, officials are deliberately indifferent if they "know[]of and disregard [] an excessive risk to an inmates health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference," Farmer, 511 U.S. at 837; Dunigan v. Winnebago County, 165 F.3d 587, 590–91 (7th Cir. 1999).

Also, to briefly re-address the plaintiff's period of placement in segregation, he was also subjected to various WRC staff deliberately and purposely repeatedly kicking his cell door as well as staff deliberately and purposely shining their flashlights in the plaintiff's face/eyes during the night which would either keep him from sleeping and/or awake him from a sleep which took him an enormous amount of effort to obtain due to the prior mentioned excessive noise.

Defendant(s) Bartow, Speech, Curran, Hart, Lacy, Harding, and Kavanaugh; each conspired under "color of state law" to deprive the plaintiff of constitutional rights, see also: Williams v. United States, 341 U.S. 97 (1945); United States v. Williams, 351 U.S. 70 (1951).

In referring to each of these defendants', "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of state law", see also: United States v. Classic, 313 U.S. 299 (1941); Ex paete Virginia, 100 U.S. 339 (1879).

Defendant(s) Spanbauer, and Barwell, also conspired against the plaintiff each time during the matter in question as well as matters involving claims dealing with this action whereby the plaintiff submitted institution level complaint(s).

Each of these defendants' purposely and/or deliberately dismissed the majority of complaint(s) submitted by the plaintiff as well as purposely delayed and failed to file/-acknowledge such complaint(s).

It is a violation of due process when the state retaliates against a person for exercising a protected statutory or constitutional right, State v. Tracy, 654 N.W.2d 37 258 Wis.2d 611, 2002 Wis. App. 221, review denied 657 N.W.2d 707, 259 Wis.2d 103 (Wis. 2002).

See also: State v. Church, 665 N.W.2d 141, 262 Wis.2d 678 (Ct.App. 2002); U.S. v. Wardle, 285 F.3d 573, 580 (7th Cir. 2002); cf. United States v. Goodwin, 102 S.Ct. 2453 (1982)(to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort).

When referring to each of the defendant(s) named herein this action, their actions reflect a prototypical case of deliberate indifference whereby the plaintiff claims being potentially serious problems/issues/concerns, repeatedly making them known to the defendants' to no avail, and the defendants' having knowledge of and disregard facts from which the inference could be drawn among other things; that a risk of serious substantial harm exist, thus satisfying the response element to present an Eighth Amendment claim, Farmer, 114 S.Ct. at 1981-82, see also: Farmer v. brennan, 114 S.Ct. 1970, 1979 (1994).

The defendant(s) have also subjected the plaintiff to continued pain & suffering, worry, humiliation, personal embarrassment, and mental & emotional distress, injuries of which the courts have concluded as being injuries for which damages can be awarded, see also: Antonelli v. Sheehan, (1 F.3d 1422, 1432 (7th Cir. 1996).

In re-addressing the conspiracy claim, the conspiracy is sufficiently supported by the totality of circumstances/facts agreed upon between the defendants' and/or 'treatment team' as a whole which deprived the plaintiff of various rights secured by the constitution and laws; their overt acts in furtherance of that end, Anton v. Sheriff Of Dupage County, Ill., 47 F. Supp.2d 993 (N.D.Ill. 1999).

Defendant(s) Spanbauer, Barwell & Speech are each involved in the decision making process involving institution complaints submitted by prisoners, these defendants' deliberately rejected, withheld and denied the plaintiff personal photo's sent to him by friend(s) of whom; ... and because some are well known celebrities.

Because some of the professions held by most of the individuals/friends; within the photo's sent to him consist of but not limited to: actresses, television anchors/commentators, and even the president of the united states and first lady, does not place the photo's in the realm and/or category of the suggested 'commercially published' nor from a vendor which the institution no longer permits.

See also: Lindell v. Frank, 377 F.3d at 658-60 (a general prohibition on the receipt of clippings from non-commercial sources violate the First Amendment.

However, which prison officials can justify prohibition on "books detailing famous prison escapes" of facilitating criminal activity, courts will not allow prison officials to stretch security justifications to prohibit content that does not pose meaningful threat, see: King v. Fed Bureau of Prisons, 415 F.3d at 630-39 (holding refusal to permit prisoner to receive book on computer programming violated First Amendment, absent showing of credible threat prisoner could use book to disrupt prison computer system).

Also, Thornburgh, for example, the Court noted that it's "important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression," 490 U.S. at 415 (quoting Turner, 482 U.S. at 90.

(13)

Prison officials violate the First Amendment when for reasons unrelated to legitimate penological interests they engage in 'censorship of ... expression of "inflamatory political, racial, religious or other views"' (citing Procunier v. Martinez, 416 U.S. at 415.

Similarly, though censorship of sexually explicit visual materials may be justified by security concerns, a regulation that would prohibit materials that for example clearly have scientific, literary, or artistic merit, even though such materials may depict nudity or describe sexual activity (such as reproductions of the Sistine Chapel, the poetry of Walt Whitman or the Song of Solomon in the Bible) will not survive judicial scrutiny, Aiello v. Luscher, 104 F.Supp.2d 1068, 1079-80 (W.D. Wis. 2000).

According to the institution/facility's adopted policy regarding the denial of any commercially published photo's and/or photo's received from a vendor, is a deliberate discriminatory act against the plaintiff and/or the family/friends whom send him photo's due to the nature of the high profile professions maintained by most of the individuals, which is among other things constitutionally suspect.

Prison officials must put forward legitimate government interest to 'justify' regulations impinging on constitutional right(s) to inmates; and must provide evidence that interests proffered is the reason why the regulation is adopted or enforced, Griffin v. Lombardi, 946 F.2d 604 (8th Cir. 1991); Ashker v. California Dept. Of Corrections, 350 F.3d 917 (9th Cir. 2003); Penterman v. Wis. Elec. Power Co., 565 N.W.2d 521, 211 Wis.2d 458.

Substantive due process forbids the government from exercising power without any reasonable 'justification' in service of legitimate governmental objective, State v. Radke, 657 N.W.2d 66, 259 Wis.2d 13 (Wis. 2002).

In addressing plaintiff's claim of being denied the benefit of services, programs and/or activities, on approximately September 09,2008, the plaintiff was asked not to return to class of which regarded a program called MRT-(Moral Reconation Therapy).

One of the instructor(s) of the MRT program was/is defendant Lacy; whom 'literally' denied and excluded the plaintiff of services, programs and/or activities offered by WRC, a public entity; as defined to include any instrumentality of State or local government; whereby there is no express exclusion of jails and prisons; §12131(1).

A public entity is also defined to be "any department, agency, special purpose district, or other instrumentality of the state or local government.

Prior to the plaintiff being asked not to return to class by the defendant Lacy, he was asked to complete an exercise from the workbook (How To Escape Your Prison) which involved completing a Pyramid of life which required him to list real life experiences on one side of the pyramid beginning from 20, 10, and 5 years ago up until the present.

On the other side of the pyramid the plaintiff was required to list in the exact same manner what possibly could have been; which the plaintiff did in fact complete however, because the defendant Lacy felt that the plaintiff's answers were not as in depth as other individuals within the class; she 'literally' began to doubt and argue with the plaintiff during the remainder of the period.

This defendant 'literally' told the plaintiff that she did not believe his personally lived accounts of his own life which he listed within the pyramid as well as openly and reluctantly spoke about before the class as were required.

As a result of defendant Lacy's disagreement, adamant doubt, and continued arguing, the defendant proceeded to the computer within the class-room at which point she pulled-up and retrieved the plaintiff's entire criminal history in an attempt to be-little him into speaking before the class about the unmost personal details of his criminal life/history.

Also, as a result of passing certain levels within this particular program, the individual(s) are judged both by the other members of the class as well as the instructor(s) whom either decide to pass or fail, nonetheless, the plaintiff was in fact judged by both parties and did pass the first level of the class but was later removed, denied, and excluded by defendant Lacy from any further participation.

Defendant Lacy's reason given for removal, denial, and exclusion of the plaintiff from further participation in the program was that she didn't think he was ready for the class; even though he had just been passed through the first level of the class by the other classmates as well as herself.

This defendant also informed the plaintiff the because she was his individual psychologist; that it would be best that he do not participate in the class where she is one of the instructors; which no doubt was a **"somke-screen"** for the real issue for denying the plaintiff continued participation in the program.

**Title II** of the ADA clearly states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132.

The ADA and RA are "similar in substance" and, with the exception of the RA's federal funding requirement, "cases interpreting either are applicable and interchangeable," see: Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998).

The Rehabilitation Act is materially identical to and the model for the ADA, Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1996), (the RA provides that no otherwise qualified individual with a disability shall be "excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance") 29 U.S.C. § 794(a).

A qualified individual with a disability is broadly defined as any person who meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity 42 U.S.C. §12131(2), see also: Torcasio v. Murray, 57 F.3d 1340 (4th Cir. 1995).

In addressing the plaintiff's claim of deformation of character/slander, each of the defendant(s) either actively encouraged, authorized, directed, acquiesced or ratified in the unconstitutional conduct claimed.

Each of the named defendant(s); 'minus' Spanbauer, and Barwell knowingly spread and/or allowed false accusations to be spread throughout the facility; pertaining to but not limited to the reasoning for plaintiff's placement in segregation, and information pertaining to the plaintiff's status, overall well being, and/or institution adjustment.

(15)

To the extent that the plaintiff is claiming relief under 42 U.S.C. §1983, he state that he was deprived of right(s) secured by the Constitution or laws of the United States, and that the deprivation(s) were visited upon him by person(s) acting under color of state law, Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only include "a short and plan statement of the claim(s) showing that the pleader is entitled to relief," the statement must simply "give the defendant(s) fair notice of what the plaintiff's claims are and the grounds upon which it rests," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) quoting Conley, 335 U.S. at 47; see also: Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004)(no heightened pleading requirement for pro se prisoner civil rights complaint).

To the extent that defendant(s) Spanbauer, Barwell, and Speech, interfered, rejected, withheld, and denied the plaintiff's personal photographs, ... an individual is entitled to an opportunity for a hearing before the state permanently deprives him or her of their property, Parratt v. Taylor, 451 U.S. 527, 540 (1981)(overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).

However, a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct 'does' give rise to a §1983 procedural due process claim when the state fails to provide an adequate post-deprivation remedy, Hudson v. Palmer, 468 U.S 517, 533 (1984).

Because state law does not provide an adequate post-deprivation remedy for re-addressing the plaintiff's denied property; even in his previous attempt to vindicate a fundamental constitutional right, and denial of IFP which actually injured him by barring him from court, due process 'has not' been satisfied.

To the extent that the plaintiff is seeking to proceed on this particular state law claim regarding the interference, rejecting, withholding, and denial of personal property, this may not violate federal constitutional standards; however, this court has the power to exercise it's supplemental jurisdiction over such claim(s) arising under state law when they are so related to claims arising under federal law that they form part of the same case or controversy.

See also: Sandin v. Conor, 515 U.S. 472 483-84 (1995)(to establish a procedural due process violation, a prisoner need only demonstrate that the state deprived him of a liberty or property interest related by state law or the Due Process Clause itself).

To the extent that each of the named defendant(s) were deliberate indifferent to the plaintiff's pain & suffering, humiliation, embarrassment, worry, mental & emotional distress, denied benefit of services, programs and/or activities, medical treatment, personal property, and religious rights/ ... etc., the Seventh Circuit Court Of Appeals has held that prison officials is/are deliberate indifferent for purpose of the Eighth Amendment when they 'knew or should have known'.

In a decision relying on Farmer was Roberts v. Williams, 456 F.2d 819 (5th Cir. 1972) ... a suit brought by a prisoner, citing: Farmer, ... the court held that the superintendent of the county farm owed a duty of reasonable care to the prisoner in his custody, see also: Youngberg v. Romeo supra, 457 U.S. at 317, 102 S.Ct. at 2458.

The state is under obligation of the law to protect those whom it incarcerate by exercising reasonable care to assure their safety; and by (compensating) them for negligently inflicted injury, United States v. Giovannett, 919 F.2d 1223, 1226-29 (7th Cir. 1990).

Deliberate indifference culpability means two things, a knowledge element satisfied by an officials' actual knowledge; and a response element satisfied by reckless disregard.

To the extent that each of these defendant(s) were reckless & grossly negligent, each of their actions, inactions, or woefully inadequate actions either indirectly or directly encouraged, authorized, directed, ratified, or acquiesced in the unconstitutional acts claimed by the plaintiff.

Some of these acts include but are not limited to: denial of food, pain & suffering, mental & emotional distress, denial of medical treatment and/or medication(s), abuse of court ordered guardianship, humiliation, embarrassment, slander, and violation of plaintiff's religious rights.

In most cases ordinary negligence and even gross negligence in the tort sense are not enough, citing: McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir. 1991), however, the Supreme Court in Farmer, 511 U.S. at 837, defined the standard in the similar terms: ... Prison officials' can be held liable in actions under the Eighth Amendment for denying an inmate humane conditions of confinement if the official **knows of** and **disregards** an **excessive** risk to an inmates **health** or **safety**.

It is "obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the [Eight Amendment] ..." Whitley v. Albers, 475 U.S. 312, 319 (1986); Santiago v. Lane, 894 F.2d 218, 221 (7th Cir. 1990).

Regarding the named defendant(s), the plaintiff have indeed demonstrated something approaching a total unconcern for his welfare in the face of serious risk; or a conscious, culpable refusal to prevent a risk of harm resulting from acts that can be inferred.

To the extent that each of these defendant(s) actions caused the plaintiff to suffer an enormous amount of humiliation, personal embarrassment, worry, and mental distress, these claim(s) are actionable in actions brought under 42 U.S.C §1983, Shamaeizadeh v. Cunigan, 338 F.3d 535 (6th Cir. 2003); Daskalea v. District Of Columbia, 227 F.3d 433 (D.C. Cir. 2000).

A plaintiff may also be compensated by bringing a civil rights claim for intangible psychological injuries as well as financial, property, or physical harms, mental and emotional distress are also claims for which a plaintiff can be compensated under §1983 even in the absence of physical injury.

Damages for humiliation, embarrassment, lack of sleep, stress, and anxiety may also be appropriate for relief under §1983 for the unconstitutional acts of state employees.

To the extent that the named defendant(s) denied the plaintiff medical treatment and/or pain medication(s), defendants' Bartow, Speech, Grosshans, Curran, Hart, Lacy, Harding, and Kavanaugh, had knowledge of the plaintiff's physical, mental & emotional state of being from which the risk of harm, ... (easily preventable) ... could be inferred.

This risk included but not limited to: their failure to feed the plaintiff, yet alone three meals a day, also their denial, & delay in providing the plaintiff with medication(s) eventually prescribed to treat his known eating disorder/phobia and/or anxiety condition.

A deliberate indifference to the serious **medical** or **health** needs of prisoners constitutes the unnecessary and wanton infliction of pain, and thus is protected by the Eighth Amendment, Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002) citing: Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)); Meriwether v. Faulkner, 821 F.2d 408, 413 (7th Cir. 1987).

This is the case "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying access to medical care or intentionally interfering with the treatment once prescribed," Estelle, 429 U.S. at 104-05.

See also: Pulliam v. Shelby County, 902 F. Supp. 797, 801-02 (W.D. Tenn. 1995)(denial of dilantin prescribed for seizure disorder); Bouchard v. Magnusson, 715 F.Supp. 1148 (D. Me. 1989)(presistent back pain); Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988)(denial of treatment that could "eliminate pain and suffering at least temporary").

Citing: Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005)(treatment "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate ... [plaintiff's] condition"); id. at 655 ("doggedly presist[ing] in a course of treatment known to be ineffective"); Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995)(medical treatment that is "so grossly incompetent, Inadequate, or excessive as to shock the conscience" ... constitutes deliberate indifference); Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991)(evidence that medical staff treated the plaintiff "not as a patient, but as a nuisance").

To the extent that each defendant/(treatment team); as a whole, **'minus'** defendant Grosshans, conspired against the plaintiff of which included but not limited to: devising a **manipulative** 'movement plan' to which the plaintiff was forcefully subjected to adhere to and/or with, limited and denied him food to eat.

Defendant(s) Spanbauer and Barwell's conspired acts also included their continued dismissals of the plaintiff's legitimately submitted institution complaint(s) for purposes of the PLRA and/or exhaustion, see also: State v. Sample, 215 Wis.2d 487, 573 N.W.2d 187 (1988) (a conspiracy may be unilateral; a person can enter into a conspiracy to accomplish a criminal objective in which only that person has a criminal intent).

To the extent that each defendant 'minus' defendant(s) Spanbauer and Barwell, abused a court ordered Temporary Guardianship resulting in the violation of the plaintiff's free exercise of religious which he indeed had a Constitutional right to practice, see: Sourbeer v. Robinson, 791 F.2d 1094, 1102 (3d Cir. 1986); Vaughn v. Garrison, 534 F. Supp. 90, 92 (E.D.N.C. 1981); Reed v. Faulkner, 842 F.2d 960, 963 (7th Cir. 1988); Weir v. Nix, 890 F. Supp. 769, 775-76 (S. D. Iowa 1995).

See also RLUIP, TO STATE A CLAIM UNDER THE Religious Land Use And Institutionalized Person Act 42 U.S.C. 2000cc-1 a prisoner need allege only that the prison has substantially burdened a religious belief.

To the extent that defendant Lacy denied the plaintiff benefit of services, programs and/or activities, the ADA among it's provisions prohibits discrimination against the disable by government entities, the RA prohibits discrimination against the disable by the recipients of federal funding; ... both provide a cause of action for injured parties.

The ADA states that the remedies and procedures set forth in the RA will be the means for injured parties to secure relief.

To the extent that defendant(s) Bartow, Speech, Grosshans, Curran, Hart, Lacy, Harding, Kavanaugh, and defendants' Spanbauer and Barwell with regard to their actions, inactions, or woefully inadequate actions through the complaint process (ICRS), denying the plaintiff food, each of these defendants' demonstrated the wanton and unnecessary infliction of pain/-(hunger pangs) and the "unquestioned and serious deprivations of basic human needs" fobidden by the Eighth Amendment.

Even when looking to the defendant(s) devised manipulative 'movement plan' to which limited and denied the plaintiff food, when considering the plaintiff's **'known'** eating disorder/phobia, mental health issues, emotional state of mind, and most importantly his phobia, the defendant(s) were well aware that their plan was not designed nor would it allow for the plaintiff to receive three meals a day like the rest of the prisoners, and <u>doubtfully</u> one considering all circumstances.

See also: <u>Mchenry v. Chadwick, 896 F.2d 184, 187 (6th Cir. 1990)</u>(the Eighth Amendment 'forbids' to the wanton infliction of ('PAIN') not ('INJURY').

Justice Field in dissent (joined by) Justice Harlan and Brewer, <u>144 U.S. at 370-371, 12 S. Ct. 693</u> advanced the thought that the Eighth Amendment's "inhibition is directed, not only against punishments of character such as inhuman and barbarous, something more than the mere extinguishment of life," but against all punishment which by their excessive length or severty are greatly disproportioned to the offenses charged.

In **Wilkerson, 99 U.S. at 136,** the court observed "it is safe to affirm that punishments of torture *** and all others in the same line of Unnecessary Cruelty are forbidden.

In <u>State of La. Ex rel. Francis v. Resweber, supra 329 U.S. at 463, 67 S. Ct. at 376,</u> The Court spoke of the "Traditional humanity of Modern Anglo Amercian Law" and "unnecessary pain" and the "wanton infliction of pain", and the dissent referred, at page <u>473, 67 S. Ct. at 381,</u> to that which "shocks the most fundamental instincts of civilized man".

A prisoner is not stripped of Constitutional rights at the prison gate, but rather s/he retain all the rights of an ordinary citizen except those expressly, or by necessary implication taken from him by the law, <u>Brown v. Nix, 33 F.3d 951 (8th Cir. 1994); Bell v. Wolfish, 441 U.S. 520, 60 L.Ed.2d 447, 99 S.Ct. 1800 (1974);</u> also: <u>Procunier v. Martinez, 416 U.S. 396 40 LEd.2d 224, 94 S.Ct. 1800 (1974).</u>

A prisoner does not lose all of his/her Civil Rights (during) and/or (because) of confinement, in particular; she/he continues to be 'protected' by the Due Process Clause of the Federal Constitution which follows him/her through prison doors, <u>Jackson v. Bishop, Supra at 576.</u>

The plaintiff hereby comes under the Title 42 U.S.C. §1983 because it provides every person who under color of any (state), (ordinance), (regulation), (custom), or usage of any state or territory, subject, or cause to be subjected, (any) citizen of the United States or other person within the jurisdiction thereof to the deprivation of any (right), (priviledges), or immunities (secured) by the Constitution and Law(s) shall be (liable) to the party (injured) in an action at law, suit in equity, or other proper proceeding for redress.

Each of these defendant(s) had an obligation under the Constitution or laws of the state to uphold; which each of them failed to do whereby their liability is being predicated upon their failure(s).

m    The Wisconsin Constitution Article I. Declaration of Rights, (Remedy for wrongs) Section 9, clearly states: every person is entitled to a certain remedy in the laws for all injuries, or wrongs which s/he may receive in his or her person, property or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay.

## COMPLAINT
### FIRST CAUSE OF ACTION

The actions, inactions or woefully inadequate actions of the defendant(s) stated herein this complaint (denied) the plaintiff Due Process Of Law in violation of the **First, Eighth & Fourteenth** Amendment rights of the United States Constitution.

## COMPLAINT
### SECOND CAUSE OF ACTION

The defendant(s) actions stated herein this complaint exhibited deliberate indifference, gross negligence, caused pain & suffering, humiliation, personal embarrassment, worry, mental distress, denied medical treatment, benefit of services, programs, and/or activities, abused court ordered temporary guardianship, conspiracy, deformation of character/slander, violated plaintiff's free exercise of religious, denied personal property, and denied the plaintiff food.

Each defendant named herein this complaint were at all times relevant to this complaint, under 'color of law', the named defendants' violated **State** and **Federal** law(s).

The defendant(s) willful actions while acting under 'color of law' deprived the plaintiff of life, liberty or property without due process of law.

The actions of the defendant(s) subjected the plaintiff to the unnecessary and wanton infliction of pain, mental & emotional distress, and deliberate indifference.

## COMPLAINT
### THIRD CAUSE OF ACTION

The actions of the defendant(s) violated institution policies and procedures, state statute(s), rules and regulations.

The actions of the defendant(s) violated the plaintiff's **First, Eighth, & Fourteenth** Amendment rights of the United States Constitution as well as **(State)** and **(Federal)** laws, and clearly established institution policies & procedures, rules & regulations.

**Wherefore,** the plaintiff hereby request this Court being Certified, and the Honorable Judge to grant the following:

Issue the necessary **(Injunctive)** relief 'ordering' that each named defendant refrain from their prior & present course of actions, inactions or woefully inadequate actions described herein this complaint.

Wherefore, it is also being requested by the plaintiff that this Court being Certified, issue a **(Declaratory Judgment)** that each of the defendants' violated the United States Constitution, State and Federal laws, Institution Policies and Procedures, and State Statutes.

It is hereby further requested that this Court being Certified, and the Honorable Judge, **(Grant) compensatory damages** in the following amount(s):

(1). $20.000 Against Defendant <u>BYRAN BARTOW</u> – (WRC WARDEN/DIRECTOR),

(2). $20.000 Against Defendant <u>THOMAS SPEECH</u> – (WRC DEPUTY DIRECTOR/REVIEWER),

(3). $25.000 Against Defendant <u>WILLIAM GROSSHANS</u> – (DAI ADMINISTRATOR),

(4). $10.000 Against Defendant <u>JOSE J. ALBA</u> – (WRC PHYSICIAN),

(5). $10.000 Against Defendant <u>MIKE HART</u> – (WRC NURSE SUPERVISOR),

(6). $10.000 Against Defendant <u>SUSAN CURRAN</u> – (WRC CLINICAL DIRECTOR),

(7). $10.000 Against Defendant <u>AUTUMN LACY</u> – (WRC PSYCHOLOGIST),

(8). $10.000 Against Defendant <u>CINDY HARDING</u> – (WRC UNIT MANAGER),

(9). $10.000 Against Defendant <u>DENNIS KAVANAUGH</u> – (WRC UNIT MANAGER),

(10). $10.000 Against Defendant <u>STEVE SPANBAUER</u> – (WRC COMPLAINT EXAMINER),

(11). $10.000 Against Defendant <u>THERESA BARWELL</u> – (WRC COMPLAINT EXAMINER).

The plaintiff further ask this Court being 'Certified', and the Honorable Judge, to **(Grant) ... (Punitive)** damagas in the following amount(s) of **$5,000.00** dollars against each of the named defendant(s).

The plaintiff further ask that this Court **(Grant)** such other relief as this Court deem **appropriate, equitable** and **just** on the premiss.

(21)

Dated this 29, day of _____June_____, 2009.


Respectfully Submitted,

John L. Dye Jr.
#207379


Subscribed and sworn to before me

This ___, day of _____, 200_

_____
Notary Public, State Of Wisconsin
My Commission expires: _____