IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

STATE OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

MILWAUKEE COUNTY

JOHN L. DYE JR.,

        PLAINTIFF,

-vs-

        DEFENDANT(S).

BYRAN BARTOW, THOMAS SPEECH,
WILLIAM GROSSHANS, JOSE J. ALBA,
SUSAN CURRAN, MIKE HART,
AUTUMN LACY, CINDY HARDING,
DENNIS KAVANAUGH, STEVE SPANBAUER,
and THERESA BARWELL.

2011 NOV 16 A 10 40

JON W. SANFILIPPO, CLERK
MAIL-RECD

Case No. 09-C-660

---

### AFFIDAVIT EXHIBIT(S)

---

I, JOHN L. DYE JR., state as follow:

(1). That I am the plaintiff in the above entitled action.

(2). That the enclosed and/or attached statement(s), documents/exhibit(s) are true and correct originals, copies of the originals, or typed duplicates of the original documents(s).

(3). The enclosed and/or attached statements, documents/exhibit(s) have not been altered by me in any way as to mislead this court or anyone who is a part of this action.

(4). That I swear under penalty of perjury as to the submitted statements, documents/- exhibit(s) herein this affidavit, and the truthfulness thereof.

Dated this  9 , day of NOVEMBER, 2009.

Subscribed and sworn to before me

This     , day of NOVEMBER, 200 9
Notary Public, State Of Wisconsin
My Commission expires: 4-11-2011

John L. Dye Jr.  #207379
Pro Se / Plaintiff

For Official Use

**STATE OF WISCONSIN, CIRCUIT COURT, WINNEBAGO** _____ **COUNTY**

IN THE MATTER OF

JOHN DYE
_____

MAY 16, 1963
_____
Date of Birth

☐ Amended

**Petition for**
☒ **Temporary Guardianship**
☐ **Permanent Guardianship**
**Due to Incompetency**

Case No. O1oG-n14

FEB – 4 20⬚

**FOR TEMPORARY AND/OR PERMANENT GUARDIANSHIPS (Complete #1 through #12)**

**UNDER OATH, I STATE THAT:**

1. I am interested as:
   ☐ a relative. I am related to the individual as: _____
   ☒ a public official. My authority to act as petitioner is: INMATE UNIT SUPERVISOR
   ☐ Other: _____

2. This petition is filed in:
   ☐ the county of residence of the individual.
   ☒ the county in which the individual is physically present.
   ☐ Other: _____

3. The residence of the individual is in MILWAUKEE _____ County, State of WISCONSIN,
   and individual's post-office address is: CURRENTLY - 1505 NORTH DRIVE, WINNEBAGO, WI 54983.

4. The name and post-office address of the person or institution, if any, that has care and custody of the individual or the
   facility, if any, that is providing care to the individual is:
   Name: WISCONSIN RESOURCE CENTER _____ Phone Number: (920) 426-4310
   Post-office Address: 1505 NORTH DRIVE, WINNEBAGO, WI 54983

☐ This petition for guardianship is being filed prior to transfer of the individual directly from a hospital to a nursing facility
   or community-based residential facility under §50.06, Wisconsin Statutes.

5. I have exercised due diligence to locate all interested parties. The names and post office addresses of all
   interested parties (including the petitioner) and all others entitled to notice are as follows: ☐ **See attached**

| NAME | RELATIONSHIP | POST-OFFICE ADDRESS |
|------|--------------|---------------------|
| DENNIS KAVANAUGH | INMATE UNIT SUPERVISOR | 1505 NORTH DRIVE WINNEBAGO, WI 54983 |
| JOHN DYE, SR. | FATHER | 8550 WEST APPLETON AVENUE MILWAUKEE, WI 53225 |
| CHARLETTA LLOYD | SISTER | 3125 SOUTH STONEGATE CIRCLE #201 NEW BERLIN, WI 53151 |
| PHYLLIS MALONE | SISTER | 2970 SOUTH MOORLAND ROAD NEW BERLIN, WI 53151 |

6. The individual, if married, ☐ does ☐ does not have children who are not of the current marriage.

7. The individual:
   ☐ does ☒ does not have a current, valid financial durable power of attorney ☐ activated.
   Name, address and phone: _____

GN-3100, 10/07  Petition for Temporary Guardianship and/or Permanent Guardianship Due to Incompetency

§§50.06, 54.10(3), 54.34, 54.50, 54.852(7)
and Ch. 54, Wisconsin Statutes

This form shall not be modified. It may be supplemented with additional material.
Page 1 of 7

# WISCONSIN RESOURCE CENTER
## HIGH MANAGEMENT SECURITY
## UNIT A-4
## INMATE INFORMATION BOOKLET

This booklet is a copy of the information which pertains specifically to Unit A-4. This packet is designed to make you more fully aware of the expectations placed upon you while you remain on Unit A-4. It is to your benefit to read this packet thoroughly and to use it as a reference when you are in doubt of a specific regulation or procedure. If any of the contents of this packet are unclear to you, consult with staff assigned to the unit for an explanation.

Byran Bartow, Director
Date

Approved

## STATE ISSUED PROPERTY –
## ALL STATUSES (Except Obs./Control)

## CLOTHING/SUPPLIES (Provided on unit)

A. One pair of socks, under shorts
B. One T-shirt, One pair of oranges (top & bottom)
C. One washcloth, towel
D. One pillow and pillow case
E. One mattress
F. Two blankets, two sheets
G. One roll of toilet paper
H. One fingertip toothbrush, One toothpaste
I. 1/2 bar of soap
J. One ssg pen

Note: Unit supplies are passed out nightly. Toilet paper, soap, toothbrush/toothpaste, seg pens will be replaced on an exchange basis. A form of unit supplies is handed out for items to be requested ahead of time. Only the supplies listed on the form are available.

## OBSERVATION STATUS
Inmates in this status will be permitted allowable Unit 4 property as approved by the Clinical Department and Unit 4 Supervisor.

## CONTROL STATUS
While an inmate is in this status, only items approved by the Unit 4 Supervisor will be permitted in the inmate's possession.

## UNIT 4 ALLOWABLE PROPERTY

The following is a list of allowed property on Unit 4, according to each assigned status. The only exceptions are items prescribed by a physicians orders.

## ALLOWED PERSONAL PROPERTY (depending on restrictions)

A. Legal material
B. Religious material
C. Dentures or partial plate w/containers
D. One container of denture cleaner
E. One approved wedding band
F. One approved medical alert bracelet or necklace (must be married and worn on finger)
G. One approved medical alert bracelet or necklace with medallion
H. Personal letters - total of 25
I. Stamps, envelopes, paper
J. One personal deodorant (Stick type)
K. One personal shower thongs (only to shower)
M. 25 total publications, to include books, magazines, newspapers, periodicals and all other publications, including legal, religious, educational, etc.
N. One deck of playing cards
O. Approved photographs
P. One address book (No metal allowed)

## UNIT 4 ACTIVITIES

## CANTEEN – ALL STATUSES
(No glass or metal)

Canteen order forms will be passed out on Mondays by second shift. This canteen order form must be turned in by 10:00 p.m. Monday night. Third shift will check for correct entries and ensure that items ordered are authorized. Canteen orders will be delivered to the unit on Thursday and passed out during first shift as authorized by their status. Only items listed on the Unit 4 allowable canteen list can be ordered. Unit staff will provide upon request. Inmates are to spend no more than $37.50 with tax included. Items not allowed on Unit 4 may not be ordered or received from the canteen or outside vendors. Allowable items lists are attached to the canteen forms.

## RECREATION
Recreation is offered daily following a rotating schedule between 1st and 2nd shifts. Inmates will be allowed a minimum of 30 minutes of Recreation, time permitting. A maximum of three inmates will be allowed to be at recreation during one time. Recreation may be terminated at any time if the inmate(s) demonstrate negative behavior while at recreation or other operational needs of the institution exist.

Unit staff will make rounds of the unit, offering inmates that are eligible, recreation. The inmate will verbally state to the staff member if he wishes to attend recreation.

## HAIRCUTS
Unit 4 offers hair cuts once per month if the inmate has been residing on Unit 4 more than 30 days. If desired, a request to the Unit 4 staff shall be made and they will put you on the list for the barber.

## ELECTRONICS
Personal electronics are not allowed on Unit 4.

## UNIT 4 INMATE CLOTHING
All assigned inmates will be required to wear orange clothes. Exchange of clothing can be done daily upon request, during scheduled showers on a one for one basis.

---

• If an inmate comes out recreation, he will remain out until the recreation period ends. At the end of the recreation period, inmates will be called individually to approach the door to be returned to their cells. Inmates will be put searched prior to the start of recreation and upon return from recreation. Items allowed to be carried to recreation are as follows: one pair prescription glasses. No other items are allowed.

• Inmates will not be eligible for recreation the day of and the following 24 hours of arrival on the unit as a period that staff can observe and evaluate new behavior. Inmates in Adjustment, Observation, Control Statuses, on Lower Tray/Back of Cell or Loss of Recreation Sanctions, will not be eligible for Recreation periods while in these statuses, however, Loss of Recreation and Adjustment statuses will be offered showers.

## MEALS
Meals will be served at approximately the following times:

| Meal | Time |
|---|---|
| Breakfast | 6:10 a.m. |
| Dinner | 10:45 a.m. |
| Supper | 4:20 p.m. |

It's the inmate's responsibility to be awake at meal times if he wishes to eat. Staff, at meal times, will ask each inmate if he wishes to eat. If there is no response from the inmate, the inmate will be asked one more time and if the inmate does not respond or come to the door to get his meal, it will be considered a refusal. If an inmate does not respond, staff will not go back and offer the inmate a tray or liquids. Staff will deliver to each cell one (tray or bag meal) and disposable spoon to those getting a tray.

• No food storage is allowed on Unit 4, all food must be consumed. If the inmate cannot consume the food, they must return it on their tray.

• Upon completion of the meal, staff will pick up trays, spoons, liquid containers and wax bags. No cups are allowed in the cell. Inmates failing to turn in these items or any misuse of the tray may result in the placed on a restriction (bag meal, size of liquid container, etc.).

• Inmates may request a bag meal, which will be granted for a minimum of 3 days (9 meals) then off for 3 days. Bag meals do not come with liquids.

• Inmates in Control Status may receive a bag meal.

• Inmates in Observation Status may receive a bag meal or a tray if authorized by a clinician.

## SHOWERS AND GROOMING
Showers will be offered daily. Inmates will be allowed to shower if their behavior has been appropriate. If an inmate is allowed to take anything in the shower area. Nail clippers are not available for use during showers. Fingernails are to be trimmed so as not to exceed the tips of the fingers.

• Inmates will be provided the following in the shower area.
A. One state issued towel, washcloth
B. 1 Liquid soap, State issued shampoo
C. One state issued T-shirt, One pair issued under shorts, socks, oranges (top and bottom)

• Inmates will have up to 20 minutes completed their shower.

• Inmates will not be eligible for showers the day of and the following 24 hours of arrival on the unit as a period that staff can observe an evaluate behavior.

• Inmates in Observation Status may shower a authorized by the RCSC/Clinician.

• Inmates in Control Status will be offered shower upon removal from Control Status.

## TELEPHONE CALLS

• Inmates assigned to Unit 4 that are in th following statuses are eligible for one telephone call per month:
A. Voluntary Lockup
B. Temporary Lockup
C. 15 minutes in length/once

• Additional phone calls will be determined by advancing in the unit level system.

• Inmates in Adjustment and Control Segregation are not authorized telephone calls unless approved by the Unit PCS.

• Inmates in Observation Status must have telephone calls approved by the Psychologist doing reviews or placement. All telephone call will be collected upon the inmate if the are calling and will not exceed 15 minutes length. All calls must be on the inmate approved visiting list, with phone number verified by the Social Worker.

• All calls provided by Clinical Service, Socia Worker, Chaplain, etc. are not to be counted a monthly calls.

Staff will supervise, monitor and dial th telephone number being called. [...]complete phone call fulfills the privilege.

• Telephone request forms will be collected b the inmate 24 hours in advance and approved b unit staff.

• Inmates wishing to call their attorney shoul send a telephone request form to their Socia Worker who can call the attorney and set up time that the attorney will be in his office t receive the call. This information will b forwarded to the unit staff by the Social Worker and the call will be made as close to that time a possible.

# LINEN EXCHANGE

Linen will be exchanged weekly on Monday and Friday at shower time for regular hygiene to include sheets, pillow case, washcloth and towel. Rags/cleaning supplies for inmates to clean their cells will also be available during that time upon request and behavior. These rags will be picked up when the inmate is done cleaning his cell that evening.

# SICK CALL-MEDICAL/CLINICAL

Inmates requesting medical attention must fill out a medical request form, stating their problem and turn it in to unit staff while they are making their rounds on the unit. Inmates requesting to see the clinical department should fill out an interview/information request form.

Inmates who feel that they need to see either medical or clinical immediately (emergency situations) should bring their problem to the attention of unit staff who may call the appropriate department and notify the unit supervisor.

# CONTROLLED MEDICATION

All medication distributed must be taken in front of a staff member and/or nurse immediately. Inmates may be tethered and cuffed to door while being given medication. All Psychotropic medication will be crushed per policy.

# INMATE COMPLAINT PROCEDURE

First step, rejected complaints and third step inmate complaint forms are available. They may be obtained from unit staff while they are passing out supplies on second shift daily. Completed forms should be given to unit staff while they are making their rounds of the unit and they will deposit them in the unit inmate complaint box.

Inmates who need assistance or information regarding the inmate complaint forms should send an interview/information request form to the institution complaint investigator.

# INMATE REQUEST FORMS

Inmates requesting information from other departments (not medical) or requesting an interview with a staff member (other than medical) should fill out and turn in an interview/information request form. Unit staff will then forward the requests to the intended parties.

# TALKING

Talking will be permitted in a normal tone of voice. Talking to staff making rounds on the unit is permitted any time in a normal tone of voice. There shall be no visiting, singing, clapping of hands, snapping of fingers or any other noisy or disturbing activity. Yelling to other staff or inmates will not be permitted unless an extreme emergency arises.

# INMATE MOVEMENT

Inmates confined to Unit 4, regardless of status, then one pair of prescription glasses.

Nothing is to be passed between the inmate and visitor and nothing may be brought back from visits, including legal papers.

Inmates assaultive towards staff and/or other inmates may be placed on three staff escort restrictions and exercise alone restriction by order of the unit supervisor. They may be placed on lower trap and back of cell restriction. Also, they may be required to wear leg restraints when out of their cells.

# INMATE LEGAL MATERIALS

Legal material being routed to other inmates in Unit 4 will be routed by Unit 4 supervisor only. All legal material to other inmates is to remain unsealed so it can be checked.

# PASSING OF PROPERTY

There will be no passing or routing of any items by anyone except for allowable routing material and then, only by the Unit 4 PCS's discretion.

# SHAKEDOWNS

A complete strip search will occur each time an inmate enters or returns to Unit 4. Cells will be frequently searched by staff.

# CELL DOOR UPPER AND LOWER TRAPS

The upper door trap will be used to place restraints on the inmate and to remove them. In addition this trap will be used to pass items, including food to the inmates.

The lower door trap will be used to pass items or food to inmates who are on a lower trap restriction. In addition the lower door trap can be used for inmates who at the time are exhibiting or threatening behavior that would lead staff to believe the inmate will try to throw items, spit or assault staff when the upper trap is opened. A Temporary Restriction form will be completed and authorized by the unit supervisor and unit manager.

In hours of darkness or when visibility is poor, staff will turn on the bright light any time the trap is opened. The upper and lower door traps on all cell doors will remain closed and locked, when not in use.

# UNIT 4 VISITING

All Unit 4 visits will be held in the A-4 visiting areas.

- Inmates will be required to wear assigned restraints while on a visit. Inmates will be strip searched prior to and after the visit.

# INMATE MOVEMENT

Inmates will not be allowed to take any items, other than one pair of prescription glasses.

- Nothing is to be passed between the inmate and visitor and nothing may be brought back from visits, including legal papers.

## Visiting hours:

6:10 pm to 9:00 pm–Wed, Thurs, Fri
(except holidays)
1:00 pm to 4:10 pm–Saturday and holidays
8:00 am to 11:00 am–Sundays

No visiting on Mondays and Tuesdays.

- Only three visits at a time will be held on Unit 4. If another visitor arrives, while a visit is in progress, they will have to wait until that visitor has completed its visit.

Inmates in Segregation Status shall be permitted visits as listed below:

| Segregated Status | Minimum visiting period |
|---|---|
| Temporary lockup | One hour per weekday and one hour per weekend within the visiting time limits. |
| Observation | One hour per weekday and one hour limit with the director's approval. |
| Voluntary Confinement | Two hours per month for the first 200 days and four hours per month thereafter. |
| Adjustment Confinement | Two hours per week. |
| Program Segregation | Two hours per week. |
| Control Segregation | None |
| Administrative Confinement | Three one hour visits per month. |

Inmates in Temporary Lockup, Observation, Voluntary Confinement, Adjustment Segregation and Program Segregation may designate 3 people from their visiting list who may visit them while in segregation. Inmates in Administrative Confinement may receive visits from any of the 12 visitors on their visiting list while in Segregation. People who have not attained the age of 18, must have the advance approval of the Security Director to visit inmates in any of the above statuses, while housed on unit 4.

A limit of one hour per visit is allowed with the exception of Administrative Confinement, or unless approved by the Security Director in writing.

A visit may be terminated by staff if the inmate becomes disruptive and/or the visitors fail to conduct themselves in an orderly fashion. If a visit is to be terminated, the unit supervisor will be contacted to resolve the problem as soon as possible. An incident report and/or a conduct report will be written describing the incident, which could result in a suspension of visiting for the inmate and/or his visitors.

# UNIT RESTRICTIONS

Unit restrictions will be applied as a response to specific negative behavior.

- Inmates who use their cup, containers or any to discharge items out of their cell or at staff will be placed on a cup restriction, by the unit supervisor.
- Inmates who threaten to throw liquids, body wastes, or other items on or at staff or out of their cell could be placed on a lower trap/back of cell restriction as well as being placed on a no cup restriction and may be issued a C.R.
- Inmates on lower trap back of cell restrictions will be required to go to the back of the cell. The inmate will remain in this position whenever a staff member is opening or closing the trap on the cell door. If the inmate refuses to comply with this order, staff will not remain in front of the cell door nor attempt to complete the function they were performing. Additional restrictions may be assigned depending on the behavior presented at the time.

All restrictions will be reviewed by the treatment team Monday, Wednesday and Friday at cross shift, but may be done any day by the regular A4 PCS.

# JUVENILE EDUCATION

Persons under the age of 18, assigned to Unit 4, are required to continue their education per Statute and WRC P/P.

L:\Units\Unit 07\07 Inmate Information Book

DEPARTMENT OF CORRECTIONS
. Division of Adult Institutions
· DOC-71·(Rev. 8/03)

WISCONSIN
Administrative Code
Chapters DOC 303

## NOTICE OF MAJOR DISCIPLINARY HEARING RIGHTS AND
## WAIVER OF MAJOR HEARING AND WAIVER OF TIME
### (for Major or Minor Disciplinary Hearings)

| OFFENDER NAME | DOC NUMBER | INSTITUTION | CONDUCT REPORT NUMBER |
|---|---|---|---|
| DYE, John    ♭˥ | 207379 | WRC | 1903083 |

### NOTICE OF MAJOR DISCIPLINARY HEARING RIGHTS

1. You have been accused and charged with a violation(s) of the rules and regulations of the institution which the Administrative Rule DOC 303.68(3) or Security Director has designated as a major offense as stated in the above-referenced Conduct Report given to you on     March 19                            , 20  09            .

2. You are advised that, if the Adjustment Committee or the Hearing Officer determines you have committed the violation(s) of institution rules and regulations alleged, you may be subject to penalties as enumerated in DOC 303.84(1)(a-k) including but not limited to the following:
   A. Adjustment Segregation;
   B. Program Segregation;
   C. Loss of Time or Extension of MR Date;
   D. Restitution;
   E. Loss of Other Specified Privileges.
   F. Disciplinary Separation

3. You are further advised that, if the Adjustment Committee or Hearing Officer determines you have committed the violation(s) of institution rules and regulations alleged, the following may result:
   A. Recommendation to Program Review Committee for:
      1. Reclassification of Security Rating;
      2. Change of Program Assignment;
      3. Transfer to Another Institution;
   B. Change of Housing Assignment;
   C. Suspension of Visiting or Corresponding Privileges;
   D. Consideration as a Basis for Denying You Parole.
      4. Removal from the Work / Study Release Program;
      5. Suspension of Leave;

      **INMATE COPY**

4. You are further advised that you have the right to respond to the alleged violation(s) and be heard by the Adjustment Committee or a Hearing Officer at a disciplinary hearing. You have the right to appear at such hearing on your own behalf and also to be assisted by a designated staff advocate. If an offender objects to the assignment of a particular advocate because the advocate has a known and demonstrated conflict of interest in the case, the Warden/Superintendent shall assign a different staff member to serve as the offender's advocate.

NAME OF STAFF ADVOCATE APPOINTED / OR DESIGNATED BY WARDEN (If hearing is not waived)

T. BARWELL

If you refuse to participate in said hearing, a staff advocate may be appointed for you and the hearing will be held while you stand mute.

5. At said hearing, you or your staff advocate will have the right to question any adverse witnesses. The Adjustment Committee or Hearing Officer may permit questions or require you or your staff advocate to submit questions to the Adjustment Committee or Hearing Officer to be asked of the Witness. Repetitive, disrespectful and irrelevant questions may be forbidden.

6. At said hearing, you or your staff advocate may present oral, written, documentary, physical evidence and evidence from voluntary eye witnesses. If there are persons who are eye witnesses (institution offender(s) and / or staff) to the alleged violation(s), you may request, in writing, within 2 days of the service of this notice when no advocate is assigned and within 2 days of the initial contact by your advocate when an advocate is assigned, using form DOC-73 which will be provided to you, that any one or more of those witnesses be present at said hearing. You may request no more than 2 witnesses (plus reporting staff member(s)) without good cause. The Security Director/designee may investigate your request to determine if the witnesses should be called. You will be given the decision in writing, which will include, if any of the witnesses are rejected, the reason for rejection.

7. The Security Director may authorize a hearing beyond the 21 day time limit, either before or after the 21st day.
   A. The hearing shall be held no sooner than 2 days, and generally not more than 21 days , after the date you were given a copy of the above-referenced conduct report.

**(CONTINUED ON REVERSE SIDE)**

8. You are further advised that you may waive the time limits for said hearing and request disposition of the alleged violations(s) or request an extension of the time limits in which to prepare for the hearing. This waiver must also be approved by the Security Director.

9. You are further advised that you may, at any time, waive your right to a formal due process (major) disciplinary hearing.

10. You are further advised that, if you waive your right to a formal due process (major) disciplinary hearing, the alleged violation(s) will be disposed of in accordance with DOC 303.75 which includes:

    A. A hearing consistent with the time frame outlined in # 7 of this form;
    B. You may present your version of the incident;
    C. The staff member(s) who wrote the Conduct Report does not need to be present;
    D. The Hearing Officer Adjustment Committee may question you and otherwise investigate the case and shall decide your guilt or innocence and decide the punishment to be imposed.

11. You are further advised that you may appeal (form #DOC-91) the Hearing Officer's or Adjustment Committee's finding of guilt and / or punishment to the Warden/Superintendent within 10 days after either a due process hearing or after you receive a copy of the decision, whichever is later.

12. You are further advised that if you refuse to attend the hearing, the hearing may be conducted without you being present.

| I certify that I have read, or had read to me, and fully understand this Notice of Major Disciplinary Hearing Rights. | OFFENDER SIGNATURE | DATE SIGNED |
|---|---|---|
| I certify that the offender has read, or I have read to him/her the Notice of Major Disciplinary Hearing Rights.<br>☒ OFFENDER REFUSES TO SIGN NOTICE | STAFF MEMBER SIGNATURE | DATE SIGNED<br>03-23-09 |

## WAIVER OF FORMAL DUE PROCESS (MAJOR) HEARING:

**NOTICE TO OFFENDER:** The Security Director made this hearing procedure a formal due process hearing. You have many rights. You may give up all of these rights and have an informal hearing in accordance with DOC 303.76(2)

1. ☐ I READ OR HAD READ TO ME THE NOTICE OF MAJOR (Formal Due Process) DISCIPLINARY HEARING RIGHTS;

2. ☐ I UNDERSTAND WHAT MY RIGHTS ARE;

3. ☐ I UNDERSTAND THAT WHEN I WAIVE MY RIGHTS, I WAIVE THE RIGHT TO;
    A STAFF ADVOCATE;
    TO REQUEST A WITNESS;
    OTHER POSSIBLE RIGHTS IN A FORMAL DUE PROCESS HEARING.

4. ☐ I WAIVE MY RIGHT TO A FORMAL DUE PROCESS HEARING; (also check box a or b)
    a. ☐ I ADMIT I AM GUILTY
    b. ☐ I DO NOT ADMIT I AM GUILTY

**TO BE VALID:** Offender must check all boxes and sign this statement. This statement must be witnessed and dated.

## WAIVER OF TIME LIMITS: (ALL HEARINGS)

☐ I WAIVE THE 2 DAY TIME LIMIT AND HAVE NO OBJECTIONS TO A HEARING SOONER        ☐ I WAIVE THE 21 DAY LIMIT

I have checked the appropriate boxes above and my signature means that:

☐ I WAIVE A FORMAL DUE PROCESS (MAJOR) HEARING or        ☐ I WAIVE TIME LIMITS or

☐ I WAIVE BOTH DUE PROCESS (MAJOR) HEARING AND THE TIME LIMITS

| OFFENDER SIGNATURE | DATE SIGNED | WITNESS SIGNATURE | DATE SIGNED |
|---|---|---|---|
|  |  |  |  |

| SECURITY DIRECTOR'S DECISION | SECURITY DIRECTOR/DESIGNEE SIGNATURE | DATE SIGNED |
|---|---|---|
| ☐ APPROVED   ☐ NOT APPROVED |  |  |

DISTRIBUTION (After Security Director's Decision) Original - Filed File / Copy - Offender / Copy - Security Officer / Copy - Advocate

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-9 (Rev. 1/02)

WISCONSIN
Administrative Code
Chapter DOC 303

# ADULT CONDUCT REPORT

**PLEASE PRINT OFFENDER'S NAME**
OFFENDER NAME

OFFENDER LIVING QUARTERS   LOCATION OF INCIDENT

IF PERSON INJURED-SPECIFY STATUS (Staff, Offender, Visitor)     CONTRABAND INVOLVED
Yes ☒No

IF WEAPON INVOLVED - WHAT

**RULE ALLEGEDLY VIOLATED**

| Rule Number | Rule | Finding of Guilt Guilty | Not Guilty |
|---|---|---|---|
| 1  303 | Disobeying Orders | 1 | 2 |
| 2  303 | | 1 | 2 |
| 3  303 | | 1 | 2 |
| 4  303 | | 1 | 2 |

**DESCRIPTION OF INCIDENT** (Include Detailed Facts upon which Charges are based, sources of information, evidence, statement of other staff members and, if appropriate, cell or shop assignment number.)

ACTIVITY AT TIME OF INCIDENT     TYPE OF HANDLING     SIGNATURE OF STAFF MEMBER COMPLETING REPORT     DATE COMPLETED
3-18-09

SECURITY DIRECTOR'S REVIEW (Complete only if no summary disposition was made)

DECISION ON CONDUCT REPORT     IS OFFENDER IN TLU     TYPE OF HEARING PROCEDURE
☒ Proceed   ☐ Dismiss   ☐ Return for Investigation     Yes No ☒     ☐ Minor Offense 303.75   ☒ Major Offense 303.76

IF A MAJOR HEARING, INDICATE WHY:
☐ The alleged violation is designated as a Major Offense by DOC 303.68(3) **OR**
☐ The offender has previously been found guilty of the same or a similar offense
     (consideration given to how often and how recently)
☐ The offender has recently been warned about the same or similar conduct
☒ The alleged violation created a risk of serious disruption at the institution or in the community
☐ The alleged violation created a risk of serious injury to another person
☐ The value of the property involved (if alleged violation was actual or attempted damage and/or misuse of property, possession of money, gambling, unauthorized transfer of property, soliciting staff or theft)

DATE COPY GIVEN TO OFFENDER     TIME COPY GIVEN TO OFFENDER
03-23-09     3:05 P.M.

RECORD OF SUMMARY DISPOSITION

SUMMARY DISPOSITION

OFFENDER'S SIGNATURE OF AGREEMENT

RECORD OF CONDUCT REPORT DISPOSITION

| MAJOR DISPOSITION | DISPOSITION(S) |
|---|---|

REFERRED TO PROGRAM REVIEW
1 Yes 2 No   Case Not Known     00GGGSRTRo     Filed 11/16/09     Page 7 of 43     Document 18

**OFFENDER**

# DISCIPLINARY HEARING
## REASONS FOR DECISION AND EVIDENCE RELIED ON

WISCONSIN
Administrative Code
Chapters DOC 303 & 324

| OFFENDER NAME | DOC NUMBER | INSTITUTION | CONDUCT REPORT NUMBER |
|---|---|---|---|
| Dye, John B-7 | 207379 | WRC | 1903083 |

| TYPE OF HEARING | | HEARING DATE | HEARING TIME | | |
|---|---|---|---|---|---|
| ☐ MINOR [303.75]  ☒ MAJOR - Full Due Process [303.76]  ☐ MAJOR - Waived [303.76(2)] | | 03/30/09 | 9:55 | A | M. |

☒ Conduct Report read aloud to offender.    ☐ Offender not present, but given a chance to attend. The committee knew
☒ Offender present at hearing                     these facts because:

**OFFENDER STATEMENT**

Yes Cindy did give me a direct order to move. The problem I have is she (Autumn Lacy) gave me this plan. They asked me if I could do the plan? "I said no!" I said I would try to make it to the cafeteria but I wouldn't be able to do the plan. I've been on B-7 since March 17th. I'm supposed to get one meal on the unit. Cindy changed the script on me and said I wouldn't get the meal if I didn't get to the cafeteria twice. Yesterday I ate breakfast in the cafeteria because there are less people in the cafeteria. I have an eating issue/phobia. I can't even eat in front of my family like if they would buy food on a visit. I told Autumn I would start with 1 meal and work forward. Cindy asked me if I'm ready to move to unit B-7? I asked "is it subject to the plan?" Cindy said "yes." And I said "I'm not ready to move."

**EVIDENCE** (The committee relies on the following evidence in finding the offender guilty)

☒ Statement in the Conduct Report #  1903083
☐ Testimony by reporting staff member
☐ Other testimony
☒ Physical evidence (Explain what)  progress notes - Dye treatment plan

☐☐ Confidential Witness Statements (attach copy of summary)
Institution rules, policies and procedures
☐ rules, polices or procedures were posted
☐ rules, policies or procedures are in a handbook given to all offenders
☒ Verbal order (writes what order was)  move to B-7 or F-12.

☐ Property slips or other information
☐ Special written order was

**DECISION** Based on the evidence, the committee finds the offender guilty or not guilty of the following offenses.)

| RULE NUMBER | SUBSECTION | | |
|---|---|---|---|
| 1. 303.24 | | ☒ Guilty ☐ Not Guilty |
| 2. | | ☐ Guilty ☐ Not Guilty |
| 3. | | ☐ Guilty ☐ Not Guilty |
| 4. | | ☐ Guilty ☐ Not Guilty |

**REASON FOR DECISION**

The committee has read the conduct report. Inmate Dye admits that he disobeyed the directive by IUS Harding to move to B-7 or F-12. The committee finds the writer of the conduct report to be creditable and one who substantiates a finding of guilt for DOC303.24 disobeying orders. The committee finds that it is more likely than not that Inmate Dye disobeyed the directives referenced in the text of the conduct report.

Dissent from Majority and Reasons for Dissent

☐ See Attachments

**DISPOSITION**
30 days of disciplinary seperation status.

**REASON FOR DISPOSITION (DOC 303.83)**
per DOC-120 face card.

INMATE
COPY

☐ See Attachments

| DATE OF DECISION | SIGNATURES OF ADJUSTMENT COMMITTEE MEMBERS OR HEARING OFFICER | SUPERVISOR |
|---|---|---|
| 03/30/09 | | Bruce A Reynolds |

| SIGNATURE OF STAFF MEMBER GIVING COPY TO OFFENDER | DATE COPY GIVEN TO OFFENDER | TIME COPY GIVEN TO OFFENDER |
|---|---|---|
| | 3 30 09 | 3:50 P M. |

CC: Original - Case File;  Copy - Offender;  Copy - Security Officer;  Copy - Advocate

VIA MAIL

# RECORD OF WITNESS TESTIMONY

This form must be used for all persons giving statements including offender, staff advocate and reporting staff member.

| OFFENDER NAME | | DOC NUMBER | INSTITUTION |
|---|---|---|---|
| DYE, John | | 207379 | WRC |

| HEARING DATE | HEARING TIME | CONDUCT REPORT NUMBER | |
|---|---|---|---|
| 03/30/09 | 9:55 am | 1903083 | |

**NAME OF PERSON TESTIFYING**
Theresa Barwell, Advocate                    ☐ Offender  ☐ Reporting Staff Member  ☒ Other

SUMMARY OF TESTIMONY (Include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)
There is no known conflict of interest between the staff advocate and inmate. "Noting else to add."

**NAME OF PERSON TESTIFYING**
IUS Cindy Harding                    ☐ Offender  ☒ Reporting Staff Member  ☐ Other

SUMMARY OF TESTIMONY (Include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)
The committee questioned writer concerning conduct report #1903083. A summary of her response includes: Dye was in agreement with the development of a plan to be on an open unit. After moving to B-7 Dye became opposed to following the plan, and then he was given directive to accept the options presented or to follow the order to be moved to another unit. Ultimately I gave Dye a direct order to cooperate with a physical move to either F-12 or B-7.

**NAME OF PERSON TESTIFYING**
☐ Offender  ☐ Reporting Staff Member  ☐ Other

SUMMARY OF TESTIMONY (Include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)

**NAME OF PERSON TESTIFYING**
☐ Offender  ☐ Reporting Staff Member  ☐ Other

SUMMARY OF TESTIMONY (Include explanation of the Committee's findings regarding the credibility of the testimony of the witness.)

| SIGNATURE OF STAFF MEMBER GIVING COPY TO OFFENDER | DATE COPY GIVEN TO OFFENDER | TIME COPY GIVEN TO OFFENDER |
|---|---|---|
| | 3-30-09 | 3:30 P M. |

CC: Original - Case File; Copy - Offender; Copy - Security Officer; Copy - Advocate

VIA MAIL

INMATE
COPY

DEPARTMENT OF CORRECTIONS
-Division of Adult Institutions
DOC-91 (Rev. 11/00)

WISCONSIN
Administrative Code
Chapter DOC 303

## APPEAL OF ADJUSTMENT COMMITTEE OR HEARING OFFICER'S DECISION

| INSTRUCTIONS TO OFFENDER: | Submit both copies of this appeal to the Warden. A copy will be returned to you when the Warden reaches a decision. | | |
|---|---|---|---|

| OFFENDER NAME | DOC NUMBER | DATE OF DECISION | CONDUCT REPORT # INVOLVED |
|---|---|---|---|
| DYE JR.   JOHN L. | #207379 | 03/31/09 | #1903083 |

### OFFENDER'S APPEAL

**FINDINGS OF GUILT** (Do not list findings that you are not appealing)

| Rule number | Reason for appealing finding of guilty |
|---|---|
| DOC 303.24 (Disobeying Orders) | Because while in segregation I was presented with a – 'movement plan' devised by my treatment team which subjected my release from segregation to the plan making my release – dependent upon my ability to eat and where I eat.  As such, several options were presented of which one of them included remaining on unit A-4 which I chose to invoke that option. |

**DECISION OF DISPOSITION** (Do not list punishments you are not appealing)

| Disposition | Reason for appealing disposition |
|---|---|
| 30 days Disciplinary – Separation. | Because the conduct report itself is **'bogus'** and should not have been written after having presented me with a 'movement plan' and/or options which the CR# is contrary to and in – contradictory of the plan/option presented to me which I – chose to invoke and was well within my right to do so as such is written in black & white within the 'movement plan' itself **(See Attached)** – |

ADDITIONAL RELEVANT INFORMATION

The information written on the DOC-84 form by the hearing officer and/or committee is not at all accurate which could possibly mislead the reviewer of this appeal, also the information and/or summary of testimony presented by IUS Cindy Harding is not accurate and is thereby – **fabricated** which also could mislead the reviewer of this appeal. **See attached for clarification**

| SIGNATURE OF OFFENDER | DATE SIGNED |
|---|---|
| DYE JR.   JOHN L. | MARCH 31, 2009 |

### OFFENDER'S WAIVER OF TIME LIMITS

I understand that I have the right to have the Warden's review of my appeal completed within 60 days of his/her receipt of this appeal. I hereby waive this time limit.

| SIGNATURE OF OFFENDER | DATE SIGNED |
|---|---|
| | |

### WARDEN'S RESPONSE

☐ I affirm the Adjustment committee/Hearing Officer's decision and the sentence.

☐ I am modifying all or part of the Adjustment committee/Hearing Officer's decision or sentence.

☐ I reverse the Adjustment committee/Hearing Officer's decision, in whole or in part.

☐ I am returning the case to the Adjustment committee/Hearing Officer for further consideration or to complete or correct the record.

REASON(S) FOR DECISION

| DATE APPEAL RECEIVED | SIGNATURE OF WARDEN | DATE OF DECISION |
|---|---|---|
| | | |

**DISTRIBUTION:** Original – SS File; Copy - Offender

On February 25, 2009 while residing on unit A-4 (segregation) a 'movement plan' was delivered to me indicating several options for movement out of segregation dependent upon my ability to eat and where I eat.

Prior to receiving the 'movement plan' the treatment team had met with me on a couple of - occasions to discuss a plan which they had devised regarding my eating disorder/phobia; thereby making my release from segregation subject to their 'movement plan' which I clearly informed them of the plan being manipulative.

On February 23, 2009 a meeting was held including myself, Rosie Neubauer-(RN), Jose J. Abla-(MD.) Melissa Mitchell-(RN), Michelle O'Neil, Dennis Kavanaugh-(Unit 4 Manager), Autumn Lacy-(Psychologist), Sue Curran-(Clinical Director), Mike Hart-(Nurse Supervisor), etc..

On approximately March 02, 2009 a meeting was held including myself, Mike Hart-(Nurse Supervisor), Rosie Neubauer-(RN), Melissa Mitchell-(RN), Bonnie O'Connel-(Social Worker), Dennis Kavanaugh-(Unit 4 Manager), Cindy Harding-(Unit 7 Manager), etc..

On February 26, 2009 Cindy Harding-(Unit 7 Manager) and Martha Stacker-(Unit 12 Manager) met with me regarding movement out of segregation at which time I **'clearly'** informed them both that I was not going to waist their time thereby noting that I was not moving out of segregation if my move would be subject to the 'movement plan'.

On march 16, 2009 Cindy Harding-(Unit 7 Manager) met with me twice at which point I informed her that I would not be moving if such was subject to the 'movement plan'. Also, on March 17, 2009 Cindy Harding-(Unit 7 Manager) met with me at which time I again declined to move if such was subject to 'movement plan'.

On March 18, 2009 Cindy harding-(Unit 7 Manager), and Martha Stacker-(Unit 12 Manager) met with me at which point C. Harding asked me if I were ready to move, I asked her if my moving would be subject to the 'movement plan' whereby she stated **'yes'** therefore I again declined to move because such would be subject to the treatment teams 'movement plan'.

At this point C. Harding indicated that she was going to give me a 'direct orde' to move to either unit F-12 or back to unit B-7, the order was given and I again declined thereby invoking one of the options written within the 'movement plan' which clearly state as follow: If inmate Dye would like to continue to eat meals in his cell, he will have to remain on unit A-4.

Upon meeting with the treatment team I informed them that if I moved my choice would be to move back to unit B-7, I also informed them that I possibly could make it down to the cafeteria - however, but that I would more likely than not; not be able to eat due to my eating disorder/ phobia.

The treatment team stated that they would then assume that my decision was to move back to unit B-7 however, at **'no'** time did I ever give them a definite and/or solid 'yes' nevertheless, - within the 'movement plan' itself it states that: These options were offered to inmate Dye and his decision is to transfer to unit B-7, (which is not entirely accurate!).

As stated within the DOC-84 form itself that upon being asked if I could do the plan I clearly said 'no', also the date of March 17th listed with the DOC-84 form is incorrect whereby the - correct date is March 19th. Also, the information within the DOC-84 form stating that I ate breakfast in the cafeteria because there were less people in the cafeteria is a miss quote and therefore is not true because I've never eaten in the cafeteria.

The statement within the DOC-84 form indicating that I allegedly said: I told Autumn I would - start with one meal and work forward; **is also a misquote!**, what I stated was that I told Autumn that I needed at least one meal on the unit.

The writer, hearing officer, and/or committee have continuously misquoted me within the DOC-84 form as listed under offender statement.

And lastly, addressing the DOC-84A form (Record Of Witness Testimony), it should be **clearly** acknowledged that I requested 'no' witnesses nor was there any witness/witnesses present at the time of the conduct report hearing itself.

I was informed by the Hearing officer and/or committee that upon asking me to step out of the room while a decision was **being** made, they contacted Cindy Harding, the writer of the conduct report and obtained the summary of testimony listed on the DOC-84A form which in and of itself is **'fabricated'.**

Her statement which state that: Dye was in agreement with the development of a plan to be on an open unit, is a **clear fabrication** of the truth. At no time was I in agreement of any plan - which is why I clearly declined to move from segregation on numerous occasions. Also, the - 'movement plan' was devised **prior** to the treatment team meeting with me.

Even further, I personally have sent numerous letters to the office of the Warden, Deputy Warden and various other individuals stating that the 'movement plan' was **'manipulative'**, therefore, - common sense dictate by 'no' means was I ever in agreement as Cindy Harding have boldly - **fabricated.**

Also, C. Harding's statement within the DOC-84A form stating: After moving to B-7 Dye became - opposed to following the plan, and then was given a directive to accept the options presented or follow the order to be moved to another unit, **'is a bold face lie told by C. Harding.**

I have been opposed to the **manipulation** and/or **manipulative** plan prior to even being released from segregation and at **no point** while on B-7 was I ever given a directive to accept the options presented or to follow the order to be moved to another unit. On Friday march 19,2009, I only briefly informed C. Harding that I would possibly be going back to Unit A-4 (segregation); and after 3/19/09 I had not even spoke with C. Harding nor her with me until March 31,2009 - therefore, the statements which she has given the hearing officer and/or committee over the - phone are **boldly fabricated;** and should be addressed accordingly.

**End Of Appeal.**

**Encl.**

cc. Personal file.

Signature

John L. Dye Jr.    #207379
Unit B-7 / Cell-129

## PROGRESS NOTES -

| Name – (Last, First, MI) | ID Number | Date – Progress Note |
|---|---|---|
| DYE John | 207379 | 2.23.09 |

Movement plan:

Inmate John Dye has been given several different options for movement, depending upon his ability to eat and where he eats. If John would like to take short term goals with his eating, and start by eating in the dayroom he would transfer to unit F-12. If John would like to utilize the skills he has learned in his work here at WRC and attend meals in the cafeteria, he can transfer to unit B-7. If inmate Dye would like to continue to eat meals in his cell, he will have to remain on unit A-4. These options were offered to inmate Dye and his decision is to transfer to unit B-7.

### B-7 criteria:

> Upon transfer to unit B-7 inmate John Dye will attend two meals a day in the cafeteria.
> The unit staff will record the times that he refuses to attend the cafeteria in the unit communication log.
> If inmate Dye does not go to the cafeteria as outlined for two days in a row, his treatment team will meet to decide if different placement is warranted.
> John will be provided clinical support two times per week to process the emotions and the coping involved with his attendance in the cafeteria, provided he has been following the above plan.
> Inmate Dye will **not** be getting a tray or a bag meal while on unit 7.

### When to review other options for inmate Dye if the plan for unit 7 is not working:

> If inmate Dye has two consecutive days of now following the above plan, the treatment team will meet to decide on placement decisions.
> If HSU determines that a medical intervention is necessary due to inmate Dye's health being compromised from not eating, a different placement option will need to be decided.

### Options available:

> If inmate Dye needs to eat in a cell in order to restore medical stability or compliance to the plan, he will need to be transferred to unit A-4.
> If inmate Dye is willing to eat in the unit dayroom to restore medical stability or compliance to the plan, he will need to be transferred to unit F-12. On unit F-12, inmate Dye will be expected to follow the unit rules and levels. During levels where inmates eat in their rooms, inmate Dye will eat in the dayroom. When he reaches a level to have meals in the cafeteria, he will be expected to eat in the cafeteria.

This plan was developed during a treatment team meeting with this writer, inmate Dye, Dr. Curran, Dr. Alba, Rosie Neubauer, Melissa Mitchell, Mike Heart, Bonnie O'Connel, Dennis Kavanaugh and Michelle O'Neil.

| SIGNATURE – | Date Signed |
|---|---|
|  |  |

**Distribution:**

Dual Diagnosis Program – DD file, Patient File/Inmate SS Clinical

Health Services – Patient File/Inmate SS, HSU, Unit File
Psychiatric –HSU
Psychological – Patient File/Inmate SS, Clinical, HSU

**DEPARTMENT OF HEALTH SERVICES**
Division of Mental Health and Substance Abuse Services
F-20556 (08/2008)

**STATE OF WISCONSIN**

## PROGRESS NOTES - PSYCHOLOGICAL

| Name –        (Last, First, MI) | ID Number | Date – Progress Note |
|---|---|---|
| DYE John | 207379 | 8.20.09 |

**Reason for WRC referral from sending institution:**

Unable to break a cycle of emotional instability and self defecting behavior despite receiving individual therapy on a regular basis.

**Purpose for individual therapy:**

Inmate Dye continues to have a very negative pattern of coping and controlling his emotions. He is currently unable to function on an open unit, because he perceives an inability to go down to the cafeteria.

**Meal plan on unit B-7**

➤ **Inmate Dye must attend two meals in the cafeteria a day to get one tray on the unit.**

➤ **For one meal in the cafeteria, he will actually get a tray and sit down for as long as possible. If he does not do this, there will not be a consequence, he will just be encouraged to be successful for this part of the plan.**

➤ **When John does not get a tray, he will walk through the line to get his silverware.**

➤ **John may plan for which meals he will attend and also plan for which meal he will eat on the unit.**

➤ **If John plans to attend two meals, eats a try and then fails to attend the cafeteria, this portion of the plan will be removed.**

➤ **If progress is not noted within this plan, it will also be reassessed for changes to help make the overall goal more successful.**

➤ **This plan will be reviewed 9/30/09 for adjustment, progress and change.**

**Plan:**

This writer will continue meeting regularly with inmate Dye until he transfers back to DOC.

| SIGNATURE – | Date Signed |
|---|---|
| | |

**Distribution:**

Dual Diagnosis Program – AODA file, Patient File/Inmate SS, Clinical
Health Services – Patient File/Inmate SS/HSU, Unit File          Filed 11/16/09     Page 14 of 43     Document 14
Psychiatric –HSU
Psychological – Patient File/Inmate SS, Clinical, HSU

**PHOBIA:** An extreme or irrational fear or dislike.

**Also:** A persistent, irrational "fear," of a specific object, activity, or situation that leads to a compelling desire to avoid it

A combining form meaning "fear," occurring in loanwords from Greek (hydrophobia); on this model, used in the names of mental disorders that have the general sense "dread of, aversion toward" that specified by the initial element: agoraphobia.

**SOCIAL:** Of or pertaining to the life, welfare, and relations of human beings in a community; social problems. Noting or pertaining to activities designed to remedy or alleviate certain unfavorable conditions of life in a community, esp. among the poor.

Pertaining to or advocating socialism.

Living in or suited to a community; of interaction between friends etc.

**GENERAL:** Not specific or definite, not limited to one class, field, product, service, etc., miscellaneous. Customary, prevailing, regular, ordinary; belonging to, or – prevailing throughout, a whole class or body collectively, irrespective of – individuals; shared by all, and belonging to one as much as another.

Of or involving all or most parts, things or people; not detailed or specific.

**ANXIETY:** A neurotic disorder characterized by pervasive anxiety. Distress or uneasiness of mind caused by fear of danger or misfortune. Earnest but tense desire; eagerness; a state of apprehension and psychic tension occurring in some forms of mental – disorder. Fear, foreboding, worry, disquiet.

The state of being troubled and uneasy.

**DEPRESSION:** Sadness; gloom; dejection, a condition of general emotional dejection and – withdrawal; sadness greater and more prolonged than that warranted by any – objective reason. Dullness or inactivity, as of trade, a low state of vital powers or functional activity.

**See also (APPREHENSION):** Alarm, worry uneasiness; suspicion, an unsettled and uneasy state of mind. Apprehension is an active state of fear, usually of some – danger or misfortune. **Anxiety** is a somewhat prolonged state of – apprehensive worry. **Apprehensive:** uneasy or fearful about something that might happen.

**AVERSION:** A strong feeling of dislike, opposition, repugnance, or antipathy. Distaste, abhorrence, disgust, Aversion, antipathy, loathing connote strong dislike or – detestation. An unreasoning desire to avoid that which displeases, annoys, or offends.

JOHN L. DYE JR.    #207379                                          SEPTEMBER 10.2008
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220


AUTUMN LACY - (PSYCHOLOGIST)
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220


Autumn Lacy - (Psychologist),

FYI, per your information regarding MRT and/or programing:

Depression and other mental illnesses can qualify as disabilities for purpose of the -
ADA, Stradley v. Lafourche Communications, Inc., E.D.La 1994, 869 F. Supp. 442, whereby -
Title II of the ADA, provides that "no qualified individual with a disability shall, on the
basis of disability, be excluded from participation in or be denied the benefit of services,
programs, or activities of a public entity, or be subjected to discrimination by any public
entity", 42 U.S.C. §12131.

The term "public entity" is defined to include any instrumentality of State or local -
government, there is no express exclusion of jails and prisons; §12131(1).

Public entity is also defined to be "any department, agency, special purpose district,
or other instrumentality of the State or local government".

A qualified individual with a disability is broadly defined as any person who meets the
essential eligibility requirements for the receipt of services or the participation in programs
or activities provided by a public entity 42 U.S.C. §12131(2), see also: Torcasio v. Murray,
57 F.3d 1340 (4th Cir. 1995).

The ADA among it's provisions prohibits discrimination against the disable by government
entities, the RA prohibits discrimination against the disable by the recipients of federal -
funding however, both provide a cause of action for injured parties.

With all due respect, (Food For Thought)!.


                                                    Sincerely/Respectfully,


cc.   Personal file.                                John L. Dye Jr.   #207379

JOHN L. DYE JR.    #207379
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220

MARCH 22, 2009

BYRAN BARTOW-(WARDEN/DIRECTOR),
THOMAS SPEECH-(DEPUTY DIRECTOR)
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220

I have received both You and Deputy Director's correspondence dated March 19, 2009 - acknowledging my recent letters concerning my continued placement in segregation status, half-time, and the treatment team's **movement plan being manipulative.**

I will address each of these concerns in reply to your recent letter in hope that you both will acknowledge the true ("FACT") surrounding my complaints.

With regard to your statement of my belief that I should be released from segregation status at half-time, let me first state that ("it is not my belief") that I should be released at half-time, I am very aware that it is the sole discretion of the Warden/Director; in fact I noted this within my previous correspondence to you citing DOC 303.70(12).

My problem with the matter is that although having served my half-time, "and" as a model-seg-inmate: thereby receiving no other conduct reports and/or conduct/behavior problems, it is more likely than not that the inmate is usually released from segregation status. Also, I reiterate as noted within my prior correspondence(s) that had the decision been made to keep me in segregation as a result of the seriousness of the offense or for whatever reason, common sense dictates that I would not even be allowed out of 'seg' even as a result of the - treatment teams present movement plan.

Therefore, to have devised a movement plan regardless of how many options; thereby making my release from segregation conducive to and/or dependent upon my ability to eat and where I eat is **'manipulative'** no matter how you "slice it". I unfortunately ended up in segregation - however, it had absolutely nothing to do with my ability to or not to eat and/or where I eat therefore devising a movement plan making my release dependent upon such is manipulative.

With all due respect, I can assure you that I'm not saying anything that you both do not - understand, it's not that I don't appreciate the much effort I'm told have been put into the plan however, to literally subject/force me into accepting such a plan in order to be - released from segregation **"is manipulative".**

With regard to Your comments of my options in terms of what units I am placed on, availability of food choices, etc; and the 'alleged' effort having been expanded to work with me around - these issues, the only options as to units having been offered/suggested were Unit(12) which is yet a "lock-down" seg status, Unit(7), or remaining on Unit(4) segregation if I refuse to accept one of the two.

However, Unit(7) requires me to attend the cafeteria twice a day whereby if I fail to do so other placement can/will be determined. With regard to Your comment concerning availability of food choices, etc., I'm not sure that I quite understand your comment because I have no problems with the availability of food choices, etc..

Now as for the treatment alleging working with me around these issues and attempting to allegedly provide me with as many choices as possible, obviously this is not completely the case because having first discontinued every food tray received on the unit and **"suddenly"** saying to me to attend the cafeteria if I wish to eat is clearly 'reckless' considering my past and present eating history.

What I personally would have suggested would have been to discontinue one tray at a time - whereby each tray discontinued I would have dedicated my efforts to attending the cafeteria one food tray at a time.

In regards to your mention of my taking advantage of the "alleged" opportunities provided to me; and Your mentioning of my refusing to honor an agreement that I'm suppose to have made - with the treatment team, allow me to again **reiterate** that these options which you call - opportunities is a devised plan of **manipulation** which prevents my release from segregation "unless" I accept it.

As to my alleged repeated refusal to honor an agreement with the treatment team, upon speaking with the treatment team I clearly informed them that without receiving any food tray on the unit; if I'm not able to eat and/or consume any food should I attend the cafeteria, I'll be - left with nothing to eat which would possibly lead to medical intervention.

However, I did inform the treatment team that I could possibly make it down to the cafeteria upon receiving enormous pressure "and" upon willingness to attempt to give the plan a try - nevertheless, there's still the matter whereas the plan being devised making it conducive to and dependent upon my release from segregation which in and of itself "is manipulative".

Nonetheless, **FYI-(For Your Information)**, I have todate given the plan a try which was the only reason I was released from segregation, however, upon honoring my "comments" and/or alleged agreement I'm supposed to have made with the treatment team, I am unable to continue to - "adhere" to the present plan for the following reasons: (Sickness), (Difficulty Breathing), (Verge of having a panic attack), etc..

Every time that I attended the cafeteria I became seriously sick of which included but not limited to: headaches, stomach ache, shakes, sweating, watery-eyed, and nauseous, whereby at such time I was left with attempting to "deal with" and "process" these reaction(s) and/or emotion(s) on my own. I "cannot" continue to feel as sick as I did daily and/or on a regular basis because that's not a good feeling at all!.

Also, I attempted the plan even though it is in **("fact")** manipulative regarding my release out of segregation, nevertheless, I was eventually offered one 'meal' on the unit instead of the two requested; to began with however, this is the reason I was able to at least try the plan, however, I had eventually only asked for one tray until I evaluated the situation.

Nevertheless, to prevent from shortchanging myself as you put it; I did at least attempt to 'adhere' to the plan but it's causing me to become and remain sick hours after the experience whereby as such I can hardly even eat the one food tray I do receive on the unit. I possibly could have continued attending the cafeteria 'once' but 'twice' at the present is a bit much.

Also, I did receive a brief note slid under my door from Autumn lacy-(Psychologist); stating: John- you have done a great job with attending the meals in the cafeteria, my hope is that you continue this positive movement. I plan to meet with you on March 26th at 10:30am please stay motivated & we'll continue to move forward.

However, the problem is not motivation but the fact that this effort has kept me very sick – for hours after the experience, I'll reiterate that I possibly could have continued at this stage; once to the cafeteria but with all sincerity twice at this point is making me very – sick 'physically'.

Also, upon originally being informed that I would be allowed 'one' food tray on the unit, – that was the extent of the information told to me however, upon briefly speaking with – Cindy Harding-(Unit(7) Manager), it appear that now all of a sudden "if I don't attend the – cafeteria I wont even get the 'one' food tray on the unit. Not that I had any intentions of not attending having tried the plan but this information was not the case prior to actually – giving the plan a try.

I really don't appreciate surprises such as this even if I had no intentions otherwise, – anyway, now I'm fighting and/or in a battle with myself just to keep eating and/or eat – something again, I will reiterate that "stress" and "depression" affects my eating/ability to eat.

Anyway upon your receipt of this correspondence I will have more then likely re-entered – segregation unfortunately and unhappily; due to the 'fact' that I cannot continue to adhere to the present 'twict a day cafeteria attendance, 'once' maybe but right now definitely not – 'twice' due to the physical: complications it's causing me.

Now if the treatment team is willing to work with that; I'm willing to re-enter population and do my very best to continue to make a 'positive' effort to create change; just at a – different pace then presently expected.

Otherwise, it appears that I'll just remain in segregation at least until I complete the – presently pending Disciplinary Separation term issued to me on January 28,2009; "unless" I'm again 'Ordered out of segregation to comply with the present plan; and I decline and I'm written a conduct report as such which I'll also note again is 'manipulation' no matter how you slice it!.

Anyway, it would be appreciated if someone would let me know something one way or the other because segregation is not at all where I'd like to be therefore in order for me to place – myself back into this horrific position after the many letters I've written you complaining of such; you must have some idea of my physical/sickness concerns.

Sincerely,

John L. Dye Jr.    #207379

cc.  Byran Bartow-(Warden/Director),
     Thomas Speech-(Deputy Director),
     Cindy Harding-(Unit(7) Manager),
     Willian Grosshans-(DAI Administrator).

JOHN L. DYE JR.    #207379                                    MARCH 26,2009
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220


WILLIAM GROSSHANS - (DAI ADMINISTRATOR)
DIVISION OF ADULT INSTITUTIONS
3099 EAST WASHINGTON AVENUE
POST OFFICE BOX 7925
MADISON, WISCONSIN 53707-7925


William Grosshans-(DAI Administrator),

Recently I have been forwarding to you several correspondence regarding issue(s) I'm having
serious problems with here at (WRC).

The issue(s) which I have been writing to you about involves: continued placement in segregation
status, half time, and the treatment team's **movement plan** being manipulative.

I'm presently writing to you because it is very necessary that I do so considering the present
course of action and/or inaction or woefully inadequate actions being taken by WRC staff -
regarding my Eating disorder/phobia.

On March 18,2009 while still in segregation on a segregation unit I was ordered out of 'seg' by
the unit manager (Cindy Harding) of unit(7) which is the prior unit I use to reside on prior to
being placed into segregation.  I was ordered out by (C. Harding) to move back to Unit(7) or 12
at which time I declined to do so because I was also informed that my moving out of segregation
I would be subject to the treatment team's **movement plan.**

Nevertheless, upon receiving more information regarding the movement plan which I found out -
would allow me to receive one-(1) meal received on the residing unit I would be moved to, the
following day I decided to give the plan a try at which time I was released from segregation
and moved to unit(7).  The plan which I have also enclosed a copy thereof herewith this letter
"does not indicate" the one meal agreed to provide me with because this decision was eventually
rendered after the plan was devised.

Anyway after allowing myself to be released from segregation thereby moving to unit(7), the
unit manager (C. Harding) changed the script of my receiving one meal on the unit to if I don't
attend the cafeteria twice a day; I wont receive the one meal, although it was known that I
was to attend the cafeteria twice, it was not told to me that if I can't/don't attend I wont
receive the one meal.

Nonetheless, I came out of the segregation on the 19th of March thereby giving the plan a try
however, upon attending the cafeteria twice I began to become **physically sick** which lasted for
several hours after the experience, nevertheless, I have todate continued to attempt to at -
least attend once a day thereby at least making an effort to comply with the plan.

The **problem I'm having is:** that if I don't attend the cafeteria "twice" (**I'm not fed**), which
leaves me without any food to eat, due to the serious physical sickness I experience if I
attend twice I'm only able to attend once which also creates problems but at least I'm trying.

Case 2:09-cv-00660-RTR    Filed 11/16/09    Page 20 of 43    Document 14

My Eating disorder/phobia will not allow me to eat in the presence of others which is only one of the symptoms of the disorder, nonetheless, while in segregation the treatment team decided to devise a **movement plan** making my release from segregation dependent upon such, in other – words I was not being let out of segregation unless I accepted this manipulative plan.

After having given the plan a try and thereby being unable to attend the cafeteria twice which would allow me to receive one meal on the unit to eat, I informed each and every necessary – WRC staff whom still refuse to give me a meal to eat even upon my making an effort to attend the cafeteria once a day.

It wasn't until I actually caught a cold and went on sick cell which confined me to the unit that allowed me to receive a food tray thereby being able to eat an actual meal which I had not had otherwise for days. Nonetheless, that was a one day thing whereby I'm again presently not receiving any food because I'm **presently unable** to attend the cafeteria twice a day due to the physical sickness it's caused me when I attempted to do so.

I also requested for **"two days"** to be placed back in segregation due to my inability to attend the cafeteria twice at the present therefore, returning back to segregation I would receive my meals in my cell whereby I would at least be eating something. I also requested to be placed back into segregation because I need a time-out due to the enormous amount of stress this – entire ordeal is causing me, however, during my two day request and/or attempt to return to segregation, WRC staff 'refused' to honor my necessary request.

However, written within the movement plan itself it clearly states that: If inmate Dye would like to continue to eat meals in his cell, he will have to remain on unit A-4, which in fact is segregation but WRC staff refused to honor even their own plan. The plan further states: If inmate Dye needs to eat in a cell in order to restore medical stability or compliance to the plan, he will need to be transferred to unit A-4.

The WRC staff have also failed to honor their own plan in the beginning stages which is of the most importance whereby they also stated that I would be provided with clinical support two – times per week to process the emotions and the coping involved with my attendance in the – cafeteria.

I find the present situation very ironic whereby when I don't eat for whatever reason, WRC – staff attempts to invoke health services and/or the court; but now that I'm attempting to eat, I'm not being provided food because I'm presently unable to attend the cafeteria twice due to my very well known and medically documented Eating disorder/phobia.

Also, on approximately March 24, 2009 I received a Conduct Report written by (C. Harding) for – disobeying orders while in segregation whereby she ordered me to move to unit(7) or 12, – however, the only problem is that the movement plan which she helped devised clearly state as listed above that: If inmate Dye would like to continue to eat meals in his cell, he will have to remain on unit A-4. Therefore, I've received a conduct report in contradictory of the – treatment team's own plan; (as I chose to invoke that portion of the plan and remain in 'seg').

The bottom line is that you continue to refer my problems right back to the individuals whom created the problem and are not willing nor are they rectifying the situation because I'm yet not receiving any meals on a daily basis to eat, and Mr. Bartow-(Director), and Mr. Speech-(Deputy – Director) have clearly let me know within a letter correspondence dated March 19, 2009 that they support the treatment team's **'alleged'** efforts and have urged me to engage fully with them in my **'alleged'** treatment.

(2)

As the movement plan also addresses unit(12), I'll reiterate that this particular unit is - also a 'lock-down' status to which I should not have to be subjected thereto whereby as of this date I only have remaining two-(2) days left on the prior term before becoming GP-General Population again although I'm presently in general population.

Nonetheless, I need a regular meal daily even if it's just one meal however, I'm not receiving such a meal presently which is why I am urging you to **personally** and **immediately** "intervene" on the matter at issue because I should not be punished by not receiving a food tray on the unit where I can at least eat; just because I'm unable to attend the cafeteria twice daily due to the physical sickness it's causing me!.

I've had this Eating disorder/phobia practically all of my life and WRC's recklessness of - taking away everyone of my previously received food trays on the unit all at once and assuming that I will be able to attend the cafeteria like other normal inmates, is being deliberate - indifferent, arbitrary and capricious to a known medical disorder.

I'll also reiterate again that it was very **'manipulative'** to have even devised a movement plan making my release from segregation dependent upon my ability to eat and where I eat when in - fact my unfortunate placement in segregation had "absolutely nothing" to do with my Eating - disorder/phobia.

As I again reiterate that I'm no receiving any meals because I'm presently unable to attend the cafeteria twice daily which would allow me to receive the one meal on the unit, I am - making a conscious effort to at least attend once to limit the physical sickness caused by twice daily, **however, I presently need food/-a meal/daily.**

I can assure you that I'm not receiving any meals because I'm presently unable to attend problem will result in "no" resolution; 'unless' given specific instructions as to how to - handle this problem. Also. as such I will have continued to 'not' receive any meals during the **neglect** of this problem.

I'm hoping that I do not have to continue to write you regarding this matter and that you - will **instruct** the necessary individuals to supply me with at least one meal daily regardless of my present inability to attend the cafeteria twice daily; due to the physical sickness in my body it's causing me.

As I personally consider this to be an urgent problem whereby I will not be receiving any - meal/food until and/or unless the problem is properly addressed by you, I'll look forward to your immediate reply upon receipt of this letter.

Encl.

Sincerely,

cc. Byran Bartow-(WRC Director),
    Thomas Speech-(Deputy Director),
    Personal file.

John L. Dye Jr.    #207379

(3)

Case 2:09-cv-00660-RTR    Filed 11/16/09    Page 22 of 43    Document 14

JOHN L. DYE JR.    #207379
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220

MARCH 29, 2009

WILLIAM GROSSHANS - (DAI ADMINISTRATOR)
DIVISION OF ADULT INSTITUTIONS
3099 EAST WASHINGTON AVENUE
POST OFFICE BOX 7925
MADISON, WISCONSIN 53707-7925

William Grosshans-(DAI Administrator),

I have been forwarding to you several letter correspondence over the past couple of months
regarding problems I have been having here at WRC.

In fact I just recently forwarded to you a letter dated as recent as March 26, 2009 which -
addresses my need to receive food to eat which I'm presently not being provided considering my
well known and medically documented Eating Disorder/Phobia.

I'll get right to the point; under the assumption that you already have a general idea as to
the problem at issue, - while in segregation I was not being released unless I accepted a -
movement plan which was devised by the so called treatment team at WRC. Although my -
placement in segregation had absolutely nothing to do with the issues of the devised plan, the
treatment team obviously though that if they devised a movement plan making my release from
segregation subject to the plan; I'd accept it in order to be released.

What the treatment team did was devised a movement plan dealing with my eating disorder/phobia
making my release subject to the plan. While in segregation all of my meals which were -
regularly received on the unit which I resided were discontinued whereby the plan which was
devised by the treatment team, my release was dependent upon my acceptance of the plan.

Anyway, upon eventually deciding to give the plan a try after a decision was made to allow me
at least one meal received on the unit if I moved back to unit(7), when I moved back to unit(7)
the script was changed by the unit manager Cindy Harding alleging that I had to attend the -
cafeteria twice just to receive the one meal when in fact I was to receive the one meal -
mandatory.

Havimng attended the cafeteria twice I became physically sick which also lasted hours after the
initial experience therefore I was unable to continue to attend twice but I have continued to
attempt to attend at least once daily which also causes complications but at least I'm trying
however, by not attending twice I'm not being 'fed' and/or receiving the one meal I mentioned
above.

As such, I have absolutely nothing to eat nor am I being provided food just because I'm unable
to attend the cafeteria due to my well known and medically documented Eating Disorder/Phobia;
which causes me to become physically sick when I try to attend the cafeteria twice. When I
religiously 'fast' going days without eating, WRC staff either becomes medically involved or
petitions the court for Guardianship against me.

HOwever, now that I'm trying to eat daily; WRC staff are refusing to feed me unless I can – magically somehow all of a sudden defeat my eating disorder/phobia and attend the institution cafeteria twice daily which is indeed causing me to become physically sick and for hours after the attempted experience.

The only way that I recently received a meal was because I became sick with a cold which allowed me to go on 'sick-cell' for a day thereby being confined to the unit and receiving a meal on the residing unit as prior received all meals before the treatment team reckless actions, – inactions or woefully inadequate actions of discontinuing my meals while I was in segregation.

The bottom line is that: my eating disorder/phobia limits certain things that I can and cannot do (presently); and because of this I should not be denied meals/food under the circumstances and under a situation that I am presently able to eat something. WRC staff is presently – expecting to much and pushing to hard which will eventually cause me to possibly shut-down all together; as have happened in the past.

I need a daily meal even if it's just one; which I'm presently not even receiving, "I need food regardless of my inability to attend the cafeteria twice daily due to my disorder/physical – sickness it causes me, once is a huge step for me right now but WRC staff do not realize that because they continue to not feed me. I have basically lived off of the 'cheese crackers' – which are given out at the 8:30pm medication pass nightly, and there is only six-(6) crackers in a pack.

I have written to you whereby on a couple of occasions you have asked the Warden-(Byran Bartow) to address the problem however, he has assured me that he and the Deputy Director-(Thomas – Speech) support the treatment teams actions, as such the problem still exists leaving me without a meal and/or food to eat on a daily basis because my disorder wont allow me to attend the – cafeteria twice daily, (but I still need to be fed!).

I have made every effort to refrain from petitioning the court in various capacities which is why I have also written to you seeking your personal help however, "with all due respect" you continue to place the problem right back into the problem hands leaving me no relief – whatsoever. Therefore, I hereby once again respectfully request your help regarding the – enclosed ongoing problem, (and please remember that until you address the problem I'm still not receiving any meals/food).

FYI-(For your information), a few of the words that explains my disorder are as follow: – (Phobia), (Anxiety), (Depression), and (Aversion).

Also, moving me to Unit F-12 should not even be an option because that particular unit is yet a lock-down segregation status and not an 'open-unit' like the presently residing Unit B-7, I'm also trying to avoid that particular unit because when prior placed on that unit my system shut completely down whereby I was moved from that unit and sent to unit(4) segregation just for not being able to eat a few meals.

Lastly, I'd like to make reference once again to the letter received by the Warden-(Byran Bartow) dated March 20, 2009 concerning my longer toothbrush request which you sent to him for response. The response of the Director was as follow: – Your March 17, 2009 letter to the DAI Administrator has been sent to me for response. You request a longer toothbrush and upon – denial of such, have properly utilized the Inmate Complaint System through all levels. – However, please understand that the reason for this prohibition is our interest in maintaining safety of staff and inmates. Having a long-handled toothbrush presents a potential weapon which could be obtained by any inmate on the unit. Your administrative remedies are now exhausted, – and your next step can be to submit your concerns to the court.

JOHN L. DYE JR.   #207379                                        MARCH 30, 2009
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220


WILLIAM GROSSHANS - (DAI ADMINISTRATOR)
DIVISION OF ADULT INSTITUTIONS
3099 EAST WASHINGTON AVENUE
POST OFFICE BOX 7925
MADISON, WISCONSIN 53707-7925


William Grosshans-(DAI Administrator),

Enclosed I have forwarded to you a copy of the letter which I sent to Byran Bartow-(Director) here at WRC regarding the enclosed mentionded matter.

As I am **'more certain than not'** that the problem discussed within the letter will be supported by the Director, I am respectfully requesting your attention be directed to the matter at - issue.

As I have continued to have numerous problem(s) getting 'problem(s)' resolved here at WRC, I am compelled to direct such matter to you in request that you personally intervene to the point of seeing that my concerns are properly addressed.

As you will see within the enclosed letter that I merely chose to invoke one of the **options** - provided to me by the treatment team within the **manipulative** 'movement plan' which was - presented to me making my release from segregation subject to and/or dependent upon such plan.

However, as a result of my choosing the option which I did, I was given a conduct report which is contrary to and in contradictory of the 'plan' itself which makes absolutely no sense at - all.

Under the circumstances I would appreciate your personal review of this matter which in fact have affected my prison status from GP-(General Population) to 30 days DS-(Disciplinary - Separation).

Again, thank you for your attention to this matter.

                                              Sincerely,


                                              _____
                                              John L. Dye Jr.    #207379
**Encl.**

cc.  Personal file

WISONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAO, WISCONSIN 54985-0220


BYRAN BARTOW - (DIRECTOR/WARDEN)
WISCONSIN RESOURCE CENTER / (WRC)
DIVISION OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES
POST OFFICE BOX 16
WINNEBAGO, WISCONSIN 54985-0016


Byran Bartow-(Director/Warden),

It was suggested by several WRC staff and supervisor(s) that I write to you regarding the
enclosed mentioned matter.

On today Monday 30, 2009 I attended a conduct report hearing for which I received -
conduct report #1903083 written by (Cindy Harding) Unit B-7 manager for violation of DOC -
303.24 Disobeying Orders.

The incident occurred while I was yet residing on Unit A-4 (segregation) serving a disposition
term of 60 days Disciplinary Separation; which conduct report was also written by the very -
same individual, (Cindy Harding).

The conduct report reads as follow:  On the above date and time I Cindy harding IUS gave inmate
Dye, John #207379 a direct order to move to B7 or F12.  He refused twice leave A4. EOR Harding
IUS.

The conduct report is dated March 18, 2009 and listed as a major offense pursuant to 303.76; -
nevertheless, at the hearing on March 30, 2009 I was determined 'guilty' by the hearing -
officer(s) and/or committee.  I'm aware that I have the 'appeal' process available to me which
I will certainly utilize should this letter fail to obtain me the immediate relief I'm due.

The problem regarding this matter is that while in segregation serving a disposition term I was
ordered out of segregstion by Cindy Harding to move back to unit B-7 or F-12 however, prior
to being ordered out of segregation I was presented with a 'movemnt plan' by the treatment -
team of which included C. Harding.

The 'movement plan' was hand delivered to me while still in segregation whereby after the fact,
Cindy Harding came to unit A-4 (segregation) on March 18, 2009 and asked me was I ready to leave
and/or be released from segregation and move back to unit B-7 or F-12, I asked her was my move
subject to the 'movement plan' which I had been given prior, she stated **yes** at which time I
then responded: no; not if I'll be subjected to the plan.

At that point Cindy Harding stated that she was going to give me a direct order to move which
she in fact did so, nonetheless, I shook my head indicating no and she then stated that I would
be receiving a conduct report for disobeying orders.

The problem is that the 'movement plan' which I had prior been given allowed me to decline to
move as ordered to do so by (C. Harding).

The 'movement plan' clearly state that: If inmate Dye would like to continue to eat meals in his cell, he will have to remain on unit A-4, therefore my having invoked that — particular option of the 'movement plan' which indeed was one of the options written in black and white, how then can Cindy Harding order me out of segregation to move on either F-12 or back to unit B-7?.

I was clearly within my right to decline without receiving a conduct report and being — determined 'guilty', the conduct report is contrary to and in contradictory of the 'movement — plan' thereby being a "catch 22". Therefore, to prevent further inconsistencies as well as to remedy the present problem which have subjected my status to change from GP-(General Population) to 30 days DS-(Displinary Separation), I'm respectfully requesting that you immediately — intervene.

As Cindy Harding was also informed personally on a prior occasion that I would be remaining on unit A-4 if my release were to be subject to and/or dependent upon the 'movement plan', she was very aware of the option(s) within the plan; particularly the one which allowed me to remain on unit A-4 which I were within my right to invoke without repercussion of receiving yet another conduct report.

Cindy Harding is a member of my treatment team, she also met with me and the treatment team, — and she was clearly aware of the option(s) within the 'movement plan', as such, the conduct report which I received and was determined 'guilty' of is "bogus" and should be voided from my record thereby informing the necessary staff to do so!.

Herewith this letter I have enclosed a typed copy of the 'movement plan' which was provided to me; and is quoted directly from the provided plan itself, for your personal review.

I will expect to hear from you at the earliest date possible in belief that you will do the — right thing and void-out this matter from my record?????.

Sincerely,

Encl.

John L. Dye Jr.          #207379
Unit B-7 / Cell-129

cc.  Thomas Speech-(Deputy Director),
     William Grosshans-(DAI Administrator),
     Personal file.

**Movement plan:**

Inmate John Dye has been given several different options for movement, depending upon his ability to eat and where he eats. If John would like to take short term goals with his eating and start by eating in the dayroom he would transfer to unit 12. If John would like to – utilize the skills he has learned in his work here at WRC and attend meals in the cafeteria, he can transfer to unit B-7. If inmate Dye would like to continue to eat meals in his cell, he will have to remain on unit A-4.

## B-7 criteria:

Upon transfer to unit B-7 inmate Dye will attend two meals a day in the cafeteria. The unit staff will record the times that he refuses to attend the cafeteria in the unit communication log.
If inmate Dye does not go to the cafeteria as outlined for two days in a row, his treatment team will meet to decide if different placement is warranted.
John will be provided clinical support two times per week to process the emotions and the coping involved with his attendance in the cafeteria, provided he has been following the above plan.
Inmate Dye will **not** be getting a tray or bag meal while on unit 7.

## When to review other options for inmate Dye if the plan for unit 7 is not working:

If inmate Dye has two consecutive days of not following the above plan, the – treatment team will meet to decide on placement decisions.
If HSU determines that a medical intervention is necessary due to inmate Dye's health being compromised form not eating, a different placement option will need to be decided.

## ...tions available:

If inmate Dye needs to eat in a cell in order to restore medical stability or – compliance to the plan, he will need to be transferred to unit A-4(Segregation). If inmate dye is willing to eat in the unit dayroom to restore medical stability or compliance to the plan, he will need to be transferred to unit F-12. On unit F-12, inmate Dye will be expected to follow the unit rules and levels. During – levels where inmates eat in their rooms, inmate Dye will eat in the dayroom. When he reaches a level to have meals in the cafeteria, he will be expected to eat in the cafeteria.

...urran, Dr. Alba, Rosie Neubauer, Melissa Mitchell, Mike Heart, Bonnie O'Connel, ...s Kavanaugh Michelle O'Neil, and Autumn Lacy.

**...bution:** Dual Diagnosis Program-AODA file, Patient File/Inmate SS, Clinical Services – Patient File/Inmate SS, HSU, Unit File Psychiatric – HSU Psychological – ...: File/Inmate SS, Clinical, HSU

JOHN L. DYE JR.    #207379                                    APRIL 04, 2009
WISCONSIN RSOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220


SUE CURRAN - (CLINICAL DIRECTOR)
WISCONSIN RESOURCE CENTER / (WRC)
DIVISION OF HEALTH AND SUBSTANCE ABUSE SERVICES
POST OFFICE BOX 16
WINNEBAGO, WISCONSIN 54985-0016


Sue Curran-(Clinical Director),

On Saturday April 04, 2009 I received your brief correspondence dated March 30, 2009; to which
I am hereby replying thereto.

You note within your letter that our perspectives on my present eating disorder/phobia and/or
eating situation are very different which I will wholeheartedly agree with you.

You also note within your letter that I've made several references to what has been offered to
me here at WRC, but that I did not mention what it is that I think would be more effective; -
and that if I have any **specific** suggestions as to what I believe would be helpful, to please
comment.

As a matter of fact I do have some suggestions as to what I believe would be helpful and it
actually include the presently pending 'plan'. On March 26, 2009; upon meeting with Autumn
Lacy I suggested to her what I'd like to see happening at this point and time whereby she -
asked me to write my suggestion down on paper and give it to her which would be discussed -
during cross-shift that day.

Upon meeting with her we discussed the matter of "give" and "take" whereby I agreed to type a
suggestion of mine down on paper which I made numerous copies for each staff member to -
personally have during cross-shift to be discussed.

I have enclosed a copy of that particular document/suggestion of mine for your personal review
on the matter however, I will also reiterate herein this letter the information I previously
provided to Autumn Lacy-(Psychologist) and other staff on March 26, 2009 for discussion at cross
shift.

Upon having attempted to comply with the present devised 'plan' as it is, whereby I am asked to
attend the cafeteria twice-(2) daily, I became **'physically'** sick which over time have gotten
much worse and not better as told it would be, nevertheless, I have continued to attempt to
adhere to the present 'plan'. The only difference is that my eating disorder/phobia will -
presently only allow me to attend the cafeteria once-(1) which also causes **'physical'** problems
for me but I'm continuing to make an effort.

I was first beginning to experience **loss of breath, sweating, shaking,** and the felling of -
being on the verge of having a **panic attack;** however, over time things have become much worse.

Although I am now only attending the cafeteria **once-(1)**, I am still experiencing **loss of breath, sweating, shaking,** and in a simi state of **panic** but I also have began to experience **seriously severe chest pain(s)** which I continue to experience hours after my return from the cafeteria - but yet I continue to attempt to make an effort.

The chest pain(s) which I have began to have as a result of my effort have also now began to last for day(s) at a time which constantly keeps me in pain. Also, after being moved back to unit B-7 from segregation, Cindy Harding changed the script on me whereas I was first told that I would be receiving one-(1) meal on the unit but when I arrived back on unit B-7; C. Harding changed the script to: if I don't attend the cafeteria twice-(2) I won't receive the one meal.

As such, I am not being fed any food/meals here at WRC but have maintained off of the pack of crackers which are given out each night at the last medication pass which only have six-(6) crackers therein. I need food to eat and because my disorder/phobia will not presently allow me to attend the cafeteria twice-(2) due to the **physical** sickness I experience, I am not being fed.

I suggest that: because I have and presently am continuing to make an effort to 'adhere' to the present 'plan' and attend the cafeteria even if it is only once-(1), that I receive the one - meal promised to me prior to my moving back to unit B-7 because I need to eat and/or be fed regardless of my presently limited ability to attend the cafeteria twice.

Since my release from segregation I've only received meals approximately three-(3) times which was the result of: (1). The first day that I was released from 'seg', (2). Having been on - sick-cell for a day, and (3). because the facility/institution was on lock-down whereby inmates were only fed breakfast in their cell.

As my body requires nourishment, the Random House Webster's Unabridged Dictionary which contains over 315,000 entries; state as follow regarding 'nutriment/nourish: To sustain with food or - nutriment; supply with what is necessary for life, health and growth, **Also:** Any substance or matter that, taken into a living organism serves to sustain it in it's existence, promoting - growth, replacing loss, and providing energy.

The body uses itself as fuel to replace the food a person is not getting, it not only uses the fat that a person have stored, but also the protein in muscle tissue. many people have died even after they've started eating again because their **heart** were weakened when the body used heart muscle for energy.

Also, I'm presently unable to resume taking my necessary and needed medication(s) because when not eating and/or not being fed any food/meals, if taking medication(s) the medicine can become concentrated in my blood and can become **toxic** which can also end in pain, convulsions, - psychosis and/or death.

Also, **FYI**-(For Your Information), if a person don't drink while not eating and/or being fed - food/meals, you can quickly be in extreme pain as your kidneys, liver and perspiration system shut down and toxic waste materials accumulate in your body which may cause permanent damage to the body.

Because my eating disorder/phobia have limited me from eating in a normal fashion, there is - absolutely on reason why I should not still be fed food and/or meals on a regular/daily basis.

Once-(1) is the very best that I can do 'presently' and I still need to eat which is not - presently happening, (read the enclosed and/or attached suggestion which was prior presented - to various WRC staff on (3/26/09).

In closing I'd just like to reiterate that I cannot continue to be **'physically'** sick on a daily basis which attending the cafeteria twice presently causes; therefore once is the very best that I can do right now which I have continued to do daily thereby attempting to deal with the 'physical' symptoms even once is causing me.

Now it's time that I'm met half-way; ('give' and 'take'), also, please be aware that in the – very beginning I attempted several days to return back to unit A-4 (segregation) but staff refused to allow me to do so even for a time-out which was very much needed due to the amount of stress caused by the present 'plan'.

Also, be informed that while in segregation Cindy Harding on march 18,2009 'ordered' me out of 'seg' at which point I declined thereby invoking one of the options of the 'movement plan' – nevertheless, C. Harding wrote me a four-(4) line Conduct Report for Disobeying Orders to – which I was yet determined guilty 'again'.

FYI-(For Your Information), the 'plan' clearly states that: If inmate Dye would like to – continue to eat meals in his cell, he will have to remain on unit A-4, nonetheless, the CR# received with-stood; which in and of itself was **'bogus'**.

Also, upon first returning back to unit B-7 I was not receiving the support which was told to me upon prior meeting with yourself and other staff/treatment team. It took a while for me to be seen by a psychologist even upon several request, also upon attempting to speak with unit staff about what I was experiencing as a result of attending the cafeteria; lack of interest was clearly exhibited.

However, you have now asked me to note specific suggestions regarding my belief as to what – would be helpful which I believe that I've done so, nevertheless, the first priority need to be seeing that I receive food and/or the one meal which I was prior promised. When I – personally refrain from eating; staff attempts to become involved however, now that I am – attempting to eat I'm not being provided food/meals considering my limited ability to presently attend the cafeteria twice.

I'll look forward to your response on the matter at issue!, and as always it's truly an honor to hear from you each time.

Sincerely,

Encl.

_____
John L. Dye Jr.        #207379
Unit B-7 / Cell-129

cc. Personal file.

With regard to the present plan which was devised by the treatment team dated
February 23, 2009.

After briefly speaking with the Psychologist (Autumn Lacy) on 2/26/09 I
suggested to her what I'd like to be in affect at the present time regarding
the plan of 2/23/09.

I was asked to write the enclosed information down on paper and give it to
the psychologist which I was informed would be discussed at cross shift on –
3/26/09.

The information enclosed is somewhat a "give" and "take" which I find to
be not unreasonable although all of you and/or treatment teat may possibly –
believe otherwise nevertheless, this is what I believe and/or would like to
see happening at this present stage!.

Due to the physical sickness attending the cafeteria twice-(2) is presently
causing me, continue to at least to attend once-(1) a day for now which in –
fact have been the case. As such, I would think that by my at least showing
that an effort is being made, I should receive my food-tray as originally told
to me.

ATTEND CAFETERIA AT LEAST ONCE A DAY, / – TWICE A DAY SUBJECT TO PSYCHOLOGIST
AND TREATMENT TEAM / INMATE DISCUSSION.

ONE FOOD-TRAY PRE CAFETERIA ATTENDANCE AND/OR SUBJECT TO ATTENDANCE.

Attending twice have been causing me some serious and real physical problems
at the present whereby I will make at least the effort to attend once to –
attempt to comply with the plan but twice is a bit much right now; and I do
not wish to continue to be physically sick everyday as a result. Will work on
twice attendance once I become simi-comfortable with once or upon discussion
with treatment tear/psychologist.

This is the best/most that I can do right now!, this is not a cop-out or
refusal to work toward change, believe me-once is difficult right now but I'm
working with it!.

WILLIAM GROSSHANS - (DAI ADMINISTRATOR)
DIVISION OF ADULT INSTITUTIONS
POST OFFICE BOX 7925
MADISON, WISCONSIN 53707-7925


William Grosshans-(DAI Administrator),

within letter correspondence dated March 26, 2009 & March 29, 2009 I forwarded information to
you which was and presently is 'ugrent' thereby needing to be immediately addressed by you.

The information and/or my complaint concerned my 'not being fed' any food and/or meals by the
residing facility and/or WRC staff.  I explained within the letter which I forwarded to you
that I have an Eating Disorder/Phobia which prevents and limits my ability to eat in a normal
fashion like other individuals/inmates.

I also informed you that while serving a disposition term on a segregation unit I was presented
with a 'movement plan' which was devised by my treatment team here at WRC whereby I was not
being released from segregation unless I agreed to accept this 'plan' which was devised by the
treatment team which I on numerous occasions informed them was **'manipulation'.**

I did also forward to you a typed copy of the 'plan' devised by the treatment team enclosed
and/or attached with my March 30, 2009 correspondence; nonetheless, after having been told that
I would receive one meal on the residing unit if I moved back to unit B-7, I decided to give
the 'plan' a try which would also allow me to be released from segregation.

Anyway, the bottom line is that I'm presently not being fed, I'm not receiving any food and/or
meal(s) provided to me by the Wisconsin Resource Center / WRC staff.  When I did allow myself
to be moved to unit B-7 the Unit Manager (Cindy Harding) changed the script on me to where as
if I don't attend the cafeteria twice daily I wont receive the one meal I was originally told
that I would.

Although having informed the treatment team that I'd make a conscious effort to attend the
cafeteria; I also informed them that I would **'not'** be able to eat (presently) in the cafeteria
due to my well known and medically documented eating disorder/phobia which presently limits my
ability to do so.

Having made a conscious effort to attend twice thereby having done so on a couple of occasions,
I begun to get **physically sick** which lasted for several hours after the initial experience
itself.  Even after a while of continued attempts to attend the cafeteria just once I continued
to get **physically sick** thereby having severe chest pains each time I attended and/or thought of
attending the cafeteria.

After a while the chest pains started to carry over into the follow day which resulted in my having been seen by HSU-(Medical) on several occasions nevertheless; I have continued to make a conscious effort to still attend the cafeteria at least once whereby if I fail to do so and miss two days in a row, I will be transferred either back to segregation and/or to unit A-12 which is in fact a 'lock-down' segregation status.

Therefore, because I was not being released from segregation unless I accepted the treatment teams 'movement plan', I'm presently subject to the 'plan' which forces me not to miss **two-2** days in a row attending the cafeteria or I'll be moved. Also, **I'm not presently being fed any food** and/or **meal(s)** of any kind or anything.

You were informed of this matter by me on several occasions whereby I respectfully requested Your personal and immediate review on the matter which have yet to happen, 'I need food and/or meal(s) to eat on a daily and regular basis which I am presently not receiving **any!**.

Because my medically documented eating disorder/phobia refuse to presently allow me to eat in the cafeteria or attend the cafeteria twice without becoming **physically sick** which no doubt involves **Anxiety**, I should not be denied food/meal(s) within an environment that I'm presently able to consume them in even if such is on the residing unit within my cell which in fact was supplied to me prior to ending up in segregation.

Having received a brief letter from the Clinical Director-(Sue Curran) here at WRC dated March 30, 2009 which states as follow: - I am responding to your letter of March 9. For obvious reasons, our perspectives on your situation are very different. I will note, however, that you make – several references to what has been offered you at WRC, but you did not mention what it is that you think would be more effective. If you have specific suggestions as to what you believe would be helpful, please comment. – (todate nothing still haven't changed)!.

On numerous occasions I informed the Clinical Director of specific suggestions as I also did again within a letter dated April 04, 2009 after receiving her March 30, 2009 letter however, within a letter forwarded to me by her dated just March 04, 2009 she stated: Quote – I am unwilling to interfer with the detailed plan developed so carefully by the treatment team – **Unquote.**

Because of my eating disorder/phobia which is medically documented; limits my ability to attend regularly and eat in the cafeteria, the food 'is not' available to me; whereby as such I'm being denied food/meal(s) to eat which is causing further **depression** and **anxiety** not to mention personal embarrassment and humiliation.

I need to be fed, the body uses itself as fuel to replace the food a person is not getting, it not only uses the fat that a person have stored, but also the protein in muscle tissue. Many people have died even after they've started eating again because their **heart** were weakened when the body used heart muscle for energy.

I'm also unable to resume taking my necessary and needed medication(s) because when not eating, it taking medication(s) the medicine can become concentrated in my blood and can become **toxic** which can also end in pain, convulsions, psychosis and/or death. As this matter is 'urgent' and does require Your immediate attention; I will assume/expect that you will intervene upon receipt of this letter.

Encl.                                                    Sincerely,

cc.   Personal file.

JOHN L. DYE JR.     #207379                                    APRIL 06, 2009
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX @@)
WINNEBAGO, WISCONSIN 54985-0220


WILLIAM GROSSHANS - (DAI ADMINISTRATOR)
3099 EAST WASHINGTON AVENUE
POST OFFICE BOX 7925
DIVISION OF ADULT INSTITUTIONS
MADISON, WISCONSIN 53707-7925



William Grosshans-(DAI Administrator),

Just a brief reminder that you also failed to respond to my previous letter regarding
the 'bogus' conduct report written which I addressed within my letter dated March 30, 2009.

If you will review the 'movement plan' devised by the treatment team which I forwarded to you
a typed copy, you will see that I was well within my right to decline to move as were one of
the options within the 'plan' itself.

As such the conduct report which was written by (Cindy Harding)-Unit Manager, was indeed
'bogus' and unwarranted.

Also, I forwarded to you documented evidence concerning the longer toothbrush issue which I
also addressed within my March 29, 2009 letter correspondence.

Your attention to these matters at the earliest date possible will be greatly appreciated,


                                    Sincerely,


                                    _____
                                    John L. Dye Jr.        #207379


cc.  Personal file.

JOHN L. DYE JR.    #207379                                    APRIL 12, 2009
DIVISION OF HEALTH AND SUBSTANCE ABUSE SERVICES
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220


WILLIAM GROSSHANS - (DAI ADMINISTRATOR)
DIVISION OF ADULT INSTITUTIONS
3099 EAST WASHINGTON AVENUE
POST OFFICE BOX 7925
MADISON, WISCONSIN 53707-7925


William Grosshans-(DAI Administrator),

Dated April 09, 2009 I forwarded to you letter correspondence in reply to your April 03, 2009 letter which I received on April 09, 2009.

Within my letter I separately addressed each issue which you mentioned within your letter however, as noted within my letter on the first page and fifth paragraph I specifically noted that upon my making copies of certain documentation which I openly spoke about; that I would forward to you copies thereof for your own person review.

By copy of this letter correspondence I have enclosed and/or attached herein the before mentioned document(s) for your review regarding the issues which I have previously written to you about on several occasions.

Please also be advised that I am still not being fed any food/meals by WRC unless I can somehow overcome my eating disorder/phobia and attend the cafeteria twice daily which would allow me to receive one meal on the residing unit to be eaten within my room.

However, as a result of my eating disorder/phobia I am limited to barely attending the cafeteria once which also result in my becoming **physically** sick of which include major chest pains which have lasted hours/days even after the initial experience.

Therefore, under the circumstances and/or due to my eating disorder/phobia which presently limits my ability to eat normally and attend the cafeteria twice in order to be fed, it is obvious that food/meals are not made available to me as required to sustain life.


Encl.                                        Sincerely,


cc.   Personal file.
                                             _____
                                             John L. Dye Jr.        #207379
_____

JOHN L. DYE JR.    #207379
DIVISION OF HEALTH AND SUBSTANCE ABUSE SERVICES
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220

APRIL 20, 2009

WILLIAM GROSSHANS - (DAI ADMINISTRATOR)
DIVISION OF ADULT INSTITUTIONS
3099 EAST WASHINGTON AVENUE
POST OFFICE BOX 7925
MADISON, WISCONSIN 53707-7925

William Grosshans-(DAI Administrator),

Recently I forwarded to you several letter correspondence concerning my not being feed any food/meals by WRC, denied anxiety medication to possibly help with my medically documented eating disorder/phobia, proof positive documentation regarding prior treatment rendered regarding my eating disorder/phobia, your being provided misleading information, and being provided proof positive information regarding the longer toothbrush and false information provided by the MD; issues.

A few of these issues including proof positive documentation were addressed and provided within my many letters of which include March 22, 2009, March 26, 2009, March 29, 2009, March 30, 2009, April 04, 2009, April 06, 2009, April 08, 2009 April 09, 2009, and April 12, 2009.

As I have yet to receive a response to my most recent letters in response to your April 03, 2009 letter, I again hereby make an effort to resolve these matters without having to petition the courts which in all actuality is appearing to lead in that direction.

I've written to you on several occasions informing you that I'm not being fed any food/meals by WRC whereby my eating disorder/phobia limits my ability to eat in a normal fashion whereby as such and/or because of the requirements being forced upon me which my disorder have refused to allow me to comply therewith, "food is not being made available to me".

I also wrote you about the bogus conduct report issued to me for 'invoking' one of the options provided to me within the treatment teams 'movement plan' to remain in segregation; and i've also sent to you proof positive documentation of longer toothbrushes being issues for medical reasons whereby the Director-(Byran Bartow) himself replied to me on your request stating quite the opposite/contrary.

I've recently sent to you documentation within a letter dated April 12, 2009 of the only efforts made to address my eating disorder/phobia; of which mite I also add that I in fact complied & made some accomplishments to an extent; which if I remember correctly was told to you on the contrary.

Nonetheless, even if you have yet to address the many issues brought to your attention by me, it would appear that considering WRC is not feeding me any food/meals of any kind; that you would consider this an urgent issue and address this particular issue ASAP.

As I have made every attempt to clearly explain the issues I'm dealing with and/or my known concerns; these concerns have continued to go unaddressed and/or ignored to the point of still existing.

I've also repeatedly informed you within each of my letters that I'm still not being feed any food/meals by WKC because my disorder limits my ability to attend the cafeteria twice daily in order to receive one meal on the residing unit to be eaten within my room/cell.

I've clearly informed you of the physical sickness my body experiences as a result of attempting to do so whereby even until this date I am yet experiencing such physical sickness and still being denied food/meals under conditions which my disorder will allow me to eat.

Anyway, as litigation on these matters at this point is certain, I again impose upon you in hope that such will not be necessary whereby these matters can be addressed and worked-out by other means.

Nevertheless, your attention is again directed to the enclosed mentioned matter and/or issues in hope that you will immediately address ongoing problem(s) I'm continuing to have regarding the enclosed mentioned issues.

Sincerely,

John L. Dye Jr.     #207379

cc. Personal file.

JOHN L. DYE JR.   #207379
DIVISION OF HEALTH AND SUBSTANCE ABUSE SERVICES
WISCONSIN RESOURCE CENTER / (WRC)
POST OFFICE BOX 220
WINNEBAGO, WISCONSIN 54985-0220

MAY 03, 2009

DIRECTOR OF ACCREDITATION
NATIONAL COMMISSION ON CORRECTIONAL HEALTH CARE
1145 WEST DIVERSEY PKWY.
CHICAGO, IL 606014-1318

Director Of Accreditation,

I happen to notice the pamphlet/memo posted on the wall here at the residing facility which
noted that your particular organization would be visiting this facility, it also indicated
that if prisoners would like to give their input and/or opinion as to past and/or present
medical treatment received here at the institution; we could do so.

In response to the pamphlet/memo I am hereby responding thereto and state as follow:  that
when it comes to my personal opinion regarding the health service care rendered and received
here at the Wisconsin Resource Center (WRC), I do not find such satisfactory.

Since my stay here at WRC which have now been approximately $3\frac{1}{2}$ to 4 years this particular stay,
I have noticed on numerous occasions; **delays in being seen/treated, negligence, reckless –
disregard, incompetence, deliberate indifference, arrogance in doctor(s),** and **manipulation**
just to mention a few things.

I have noticed numerous flaws in the health care issued here at (WRC) of which in certain
cases could have also resulted in the taking of wrong medication as issued by medical staff,
refusal to issue prescribed and/or needed medication(s), misdiagnosis, staff fabrication,
among other flaws.

Having been here at (WRC) for several years I have without doubt had the opportunity of dealing
with the health care and/or services department on an uncountable amount of occasions whereby
the majority of such dealings could clearly be construed as being negative rather than positive.

However, I will admit that on occasions I have in fact dealt with health care services on a
positive level and/or without incident, nonetheless, I reiterate that the majority of my visits
over a number of years depending upon whom I was subject to interact with resulted/result in a
negative outcome of which include the treatment rendered and/or lack thereof.

Although personal, I personally have been bleeding from a certain area of my body now for over
three-(3) years todate whereby medical here at (WRC) have been informed of such medical problem
time and again but have yet todate to adequately/properly treat and/or address the problem
which I can honestly say still exists.

Certain actions, inactions or woefully inadequate actions by (WRC) are negligent, reckless,
indifferent, manipulative and rendered with arrogance.

There are also certain doctor(s) of whom numerous prisoner(s) here at (WRC) have had and continue to have nothing but ongoing problems with of which ('with all due respect') include but not limited to: (Jose J. Alba, M.D.).

As I can clearly continue on with my personal evaluation of the health care services rendered here at (WRC), I will limit my evaluation/opinion to the enclosed mentioned herein this letter correspondence which I've drafted for the very purposes of review on the matter.

As I would have absolutely no problem speaking with a representative from your organization upon visiting the residing facility, please feel free to contact me at any time regarding the matter at issue should any further and/or necessary questions arise.

Thank you for your attention to this matter; and your acknowledgment of receipt of this letter correspondence will be greatly appreciated.

                                        Sincerely/Respectfully,


                                        _____
                                        John L. Dye Jr.    #207379

                                        Unit B-7 / Cell-129


cc. Personal file.

    U.S. Department Of Justice

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

## AFFIDAVIT OF ALLEN PAYETTE

Allen Payette, being duly sworn, deposes and says:

1. The plaintiff in this case and myself have the same doctor assigned to us. That doctor's name is Dr. Alba.

2. Dr. Alba has not been willing to treat my anxiety problems based on he believes everyone is drug seeking.

3. Dr. Michlowski is Dr. Alba's boss and is the head of the psychiatrist at the Wisconsin Resource Center.

4. I personally have wrote to Dr. Michlowski concerning the problems I have head with Dr. Alba. In the same letter I informed Dr. Michlowski that I am having serious thoughts of self harm and suicide. I wrote two letters to Dr. Michlowski. He has not responded to either letter. It has now been over 50 days since I have written him. It appears that they are disregarding the entire matter.

5. I have repeatedly requested help from the above doctors as I am concerned that I will serious harm myself. I have come to find out that they don't care until you actually seriously harm yourself.

6.  I have constantly seen the medical - psychiatrist at this facility ignore and disregard risk to the inmates.

7.  Dr. Michlowski is aware of several complaints on Dr. Alba however, he refuses to do anything about it. I personally requested that I'd be reassigned to a doctor who will be willing to treat my conditions. Dr. Michlowski refuses to respond to my request.


   I declare under penalty of perjury that the foregoing is true and correct. Executed on this ___25___ day of ___MAY___ ,2009


Respectfully Submitted,

Allen Payette #249908


Allen Payette #249908
Wisconsin Resource Center
P.O. BOX 220
Winnebago, Wisconsin  54985